Luster H. JACKSON, Brenetta M. Howell, Jesse D. Madison, Alfred L. Portis, Richard J. Barnett, L. Roscoe Boler and Richard Criley, on behalf of themselves, and all others similarly situated, Plaintiffs-Appellants,

v.

Richard B. OGILVIE, individually and as Governor of the State of Illinois, Defendant-Appellee.

No. 18388.

United States Court of Appeals, Seventh Circuit.

May 6, 1970.

Jonathan D. Smith, Chicago, Ill., for plaintiffs-appellants.

William J. Scott, Atty. Gen., Chicago, Ill., for defendant-appellee; John F. Galvin, Asst. Atty. Gen., of counsel.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

FAIRCHILD, Circuit Judge.

Plaintiffs brought an action for a mandatory injunction requiring the Governor of Illinois to issue a writ of election to fill a vacancy in the United States House of Representatives. On March 16, 1970, the district court dismissed the action for want of jurisdiction. Plaintiffs appealed and this court expedited the appeal.

Plaintiffs averred that they are qualified electors of the sixth congressional district of Illinois and that they bring the action on behalf of all other such electors as well; that on August 13, 1969, the Honorable Daniel Ronan, Representative from that district, died; that defendant, the Honorable Richard B. Ogilvie, Governor of Illinois, has failed and refused to issue a writ of election to fill the vacancy. Plaintiffs also averred that the former Representative from the thirteenth congressional district of Illinois resigned May 25, 1969, the Governor issued a writ of election May 27, and a new Representative was elected November 25, 1969 and is now serving.

Plaintiffs point to Article I, § 2, clause 4 of the Constitution of the United States, providing: "When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies."

In brief, it is the theory of plaintiffs that they have a right, created by the federal constitution, to representation in the House of Representatives notwithstanding the death of the Representative elected from their district for the current term; that the quoted clause 4 imposes a duty and does not merely confer authority; and that defendant, as Governor, is acting under color of state law in depriving them of such right. Jurisdiction would follow under 28 U.S.C. § 1343(3). Plaintiffs also assert that defendant's failure to call a special election in their district denies them equal protection of the laws.

The Attorney General raises several points on behalf of defendant. He asserts that the applicable Illinois statutes require a lapse of at least 162 days from

the call to the election.[1] If the Governor had, on August 14, 1969, called a special election, the earliest possible date of election would have been January 23, 1970, leaving more than eleven months but less than a full year in which the newly elected Representative might serve. The Attorney General suggests that the Governor was exercising his executive discretion to draw the line at one year. The Attorney General further asserts that the people have no inherent right to hold an election; that the regulation of the matter is for the legislature, not the courts; that the question is political, not justiciable; that clause 4 is merely directory; that there is no available remedy, mandatory injunction, mandamus, and declaratory relief each being inappropriate. The Attorney General has admitted plaintiffs' averments of fact above set forth except for the qualifications of plaintiffs as residents and electors. He asserts that in fact a special election would cost about $400,-000.

The district court, in deciding that it had no jurisdiction, apparently measured the substantiality of plaintiffs' rights in terms of time, for it said: "This Court does not find that the relatively short period in which the Sixth District will remain unrepresented raises any questions of denial of due process or equal protection guaranteed by the Fourteenth Amendment sufficient to invoke this Court's jurisdiction."

We do not share the view that the length of time remaining for possible service when the district court spoke, on March 16, was *de minimis.* An election called March 16 could have been held August 25, leaving four months during which the successor might have served.[2]

■ We have no doubt but that the complaint stated a cause of action for deprivation of a right secured by the constitution, the district court had jurisdiction thereof and power to afford a suitable remedy, and the claim is justiciable.

The right to have district boundaries drawn so that there shall be "equal representation for equal numbers of people" in the House of Representatives, and the propositions that the district courts have jurisdiction of lawsuits to secure that right, that electors have standing to sue, and that the claims are justiciable are well settled.[3] The right is derived primarily from the provisions of Article I, § 2 that Representatives be "chosen every second Year by the People of the several States" and for apportionment among the states, read in the light of the history of the Great Compromise, by which "in *one* branch the *people,* ought to be represented; in the *other,* the States."[4]

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right."[5]

Plaintiffs' claim that they are being deprived of a right of representation is sufficient for jurisdictional purposes. They also claim denial of equal protec-

---

1. Plaintiffs have not challenged this computation nor the validity of the statutes which provide for it. As will be seen, control of this element of procedure has been left to the state legislatures.

2. It should be pointed out that none of the delay up to March 16 can be charged to the district court. The plaintiffs did not bring their action until December 16. Their counsel explains that they are poor people, unable to proceed until they could obtain counsel without expense to them. Defendant did not appear to defend the action until February 18. His counsel explains that the summons and complaint were mislaid after service and were first brought to the attention of an executive assistant six weeks later after a telephone call from plaintiffs' counsel. The district court acted promptly after the parties submitted briefs.

3. Wesberry v. Sanders (1964), 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481.

4. *Wesberry,* p. 13, 84 S.Ct. p. 533.

5. *Wesberry,* p. 17, 84 S.Ct. p. 535.

tion of the laws. Challenges on that ground to state laws regulating the appearance on the ballot of new party or independent candidates for presidential elector have been held justiciable.[6]

One district court has held, finding a similarity with apportionment cases, that it has jurisdiction of a claim of electors that failure of local officers to call a special election to fill vacancies in their city council is a denial of equal protection of the laws.[7]

■ The issue at the heart of the instant case is whether the constitutional provision that when vacancies happen the Executive Authority of the state "shall issue Writs of Election to fill such Vacancies" is mandatory. The language is mandatory according to the ordinary meaning of its terms. We find no persuasive reason for reading it in a directory sense. Indeed it serves to make clear that the people's right to chosen representation is not limited to exercise at a biennial election, but is a continuing right which is not to be defeated by death of a Representative once chosen, or other cause of vacancy.

In a debate in the House of Representatives in 1804 concerning the validity of a special election questioned on the ground of shortness of notice, Representative Findley stated in support of the prompt holding of the election (held five months before the expiration of the term) that, "[t]he Executive shall issue writs, is the language of command; it renders the issuing of the writs an indispensable duty."[7a]

The Attorney General points out that Article I, § 4 provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legis-

lature thereof; but the Congress may at any time by Law make or alter such Regulations. * * *" Congress has provided in 2 U.S.C. § 8 that the time for holding an election for a Representative to fill a vacancy may be prescribed by the laws of the state.

■ There has been no challenge to the propriety of the Illinois laws which require a total period of 162 days from call to special election. Such provisions would render it useless for the Governor to issue a writ of election where the vacancy occurred 162 days or less before the end of a term, and might well excuse issuance where the vacancy occurred earlier but where the period of possible service could truly be deemed *de minimis*. Except in those instances the delegation to the state legislature of this power over procedure does not, in our opinion, alter the character of the Governor's duty to issue a writ of election.

Although the state legislatures are not empowered to decide whether or not a vacancy in the office of Representative is to be filled, we note that the Illinois statutes have provided for many years that when such a vacancy occurs, the Governor "shall issue a Writ of Election" to the county clerks of the appropriate counties.[8] On November 14, 1917 the Attorney General of Illinois advised the Governor, with respect to a vacancy in the office of Representative, "In this instance, a public right is involved * * * the right of the people of the congressional district to be represented in the House of Representatives in Congress. To hold that the word 'shall' is directory, merely, is to put it within the power of the Governor to deprive the people of the congressional district of that right."[9]

6. Williams v. Rhodes (1968), 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24; Moore v. Ogilvie (1969), 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1.

7. Hackett v. President of City Council of City of Phila. (E.D.Pa., 1969), 298 F. Supp. 1021, 1026, aff'd on another point, 410 F.2d 761.

7a. Quoted in M. St. Clair Clarke and David A. Hall, Cases of Contested Elections (Washington, D. C. 1834), the Case of John Hoge of Pennsylvania, at page 139.

8. 46 Ill.Rev.Stats. § 25-7.

9. Biennial Report of the Attorney General of Illinois, 1917–18, pp. 315, 316, Opinion No. 5007.

■ We hold that defendant had the duty, at the time of the death of Representative Ronan, to issue a writ of election to fill the vacancy. The fact that an election could not be held until January 23, 1970 and that the successor could have served little more than eleven months at the most, would not, in our opinion, justify failure to issue the writ. The Governor's duty, we think, continued, notwithstanding the fact that delay may eventually render the calling of a special election of so little use that the duty will no longer be enforceable.

The judgment of the district court was founded on an erroneous premise of lack of jurisdiction, and unless the passage of additional time has rendered the controversy moot, the judgment must be reversed and the cause remanded.

■ We note that a general election will be held November 3, 1970, and that a Representative will then be elected for the term beginning January 3, 1971. We are not aware of any reason why a special election could not be held the same day for a Representative to fill the vacancy for the balance of the term which began January 3, 1969. Such a special election (and the primary which would have to precede it) could be called as late as May 25. We are not prepared to say as a matter of law that representation from the time the results of the November 3 election will be determined to January 3, 1971 is *de minimis*.

It follows that the district court should proceed to determine the merits and formulate its decree as expeditiously as possible.

■ The Attorney General questions the remedy which the district court has the power to employ. We conclude that it is not limited in its choice of an appropriate remedy by the fact that defendant is the Governor of a state. 42 U.S.C. § 1983 broadly authorizes an action at law, suit in equity, or other proper proceeding for redress of the deprivation of rights suffered by plaintiffs.[10]

If the district court determines on the basis of evidence presented on remand of this case, that relief in the form of a mandatory injunction is not proper, the controversy between the parties will, nevertheless, not become moot. Plaintiffs are still entitled to a declaratory judgment that the defendant has breached his duty under Article I, § 2, Clause 4 of the constitution to call a special election. Controversies of this type in the election field are peculiarly "capable of repetition, yet evading review."[11]

We are mindful that in cases involving legislative redistricting, courts have not enjoined or issued mandamus to a legislature, but after declaring that the duty exists, and given an opportunity to perform it, have formulated districts by judicial decree in the event of continued failure of the legislature. The legislature is a large deliberative body, and presumably has open to it choices among several legitimate plans of districting.

But in the case of a Governor's failure to issue the writ of election, we think a mandatory injunction would be appropriate. The Governor is an individual officer. The key question is whether the Governor has discretion to refuse to call a special election. Once it has been determined that he does not, and that plaintiffs are being deprived of a right secured by the constitution, the district court has the power necessary to give redress. Redress, in this instance, requires affirmative action and the same may be compelled by mandatory injunction.[12]

■ In performing the duty established in Article I, § 2, Clause 4 the defendant does not have discretion to decide against filling the vacancy. His

10. See Sterling v. Constantin (1932), 287 U.S. 378, 393, 53 S.Ct. 190, 77 L.Ed. 375.

11. See Moore v. Ogilvie (1969), 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1.

12. See Williams v. Rhodes (1968), 393 U.S. 23, 35, 89 S.Ct. 5, 21 L.Ed.2d 24.

discretion in calling a special election is limited. For instance he may prefer one day of the week over another, or cause the special election to coincide with or to avoid being held on the same day as another election. If the district court determines that affirmative relief should be granted, a decree should be framed in a manner which will preserve defendant's latitude and discretion in these matters.

The judgment is reversed and the cause remanded for further proceedings.

HASTINGS, Senior Circuit Judge (concurring and dissenting).

I concur in that part of the majority opinion which holds that "the judgment of the district court was founded on an erroneous premise of lack of jurisdiction * * *." I further agree that the judgment must be reversed and the cause remanded. And, I would agree with the majority that the length of time remaining for possible service of a successor representative when the district court spoke on March 16, 1970 was not *de minimus*.

As best I can understand the meager information made available to us on this "quickie" appeal, this was the only question the district court considered and passed upon. This is the principal question that was argued and presented to us on this expedited appeal. If so, then the normal and reasonable course to pursue would be to reverse and remand for a hearing on the merits. There has been no such hearing to date. We do not have the views of the district court on the several important legal issues raised and the grave constitutional questions to be decided for the first time.

The majority opinion undertakes to resolve with finality the meaning and applicability of Article I, § 2, Clause 4 and Article I, § 4 of the Federal Constitution, as well as Title 2, U.S.C. § 8, together with 46 Ill.Rev.Stats. § 25–7.

With deference, I suggest that we are not in a position to do this now.

The majority aptly observes that the delay and short time remaining for the disposition of this appeal is not to be charged against the district court nor to this court. And I agree with their further observation "that delay may eventually render the calling of a special election of so little use that the duty will no longer be enforceable."

I am compelled to conclude, however, that the constitutional questions, as well as the related legal issues, should first be thoroughly aired and considered by the learned district court. If an appeal therefrom is to be taken, we can then consider and treat the issues raised in an atmosphere of deliberative understanding and not on a cafeteria line of judicial service.

Such a restrained procedure may well result in rendering the enforcement of a special election moot in this case. But, that need not end the matter. As in Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969), the mere passing of the time during which the requested mandatory injunctive remedy could be afforded here would not require the dismissal of this action. Rather, as in *Moore*, as long as Illinois maintains her present system of certifying elections to fill Congressional vacancies this problem is "capable of repetition, yet evading review. * * * The need for its resolution thus reflects a continuing controversy in the federal-state area" which should be resolved.

I believe this fresh constitutional matter presents the crucial question at issue. Declaratory judgments to determine such controversies should not issue without the opportunity for an informed and full consideration. This has not been afforded to either the district court or to us.