The **STANFORD DAILY** et al.,
Plaintiffs,

v.

James **ZURCHER**, Individually and as Chief of Police of the City of Palo Alto, County of Santa Clara, State of California, et al., Defendants.

No. C–71–912 RFP.

United States District Court,
N. D. California.

Aug. 10, 1973.

Anthony G. Amsterdam, Stanford University Law School, Stanford, Cal., Jerome B. Falk, Jr., Frank Garfield, Howard, Prim, Rice, Nemerovski, Canady & Pollak, San Francisco, Cal., for plaintiffs.

Leland D. Stephenson, Deputy County Counsel, San Jose, Cal., Peter G. Stone, City Atty., Palo Alto, Cal., Melville A. Toff, Mountain View, Cal., for defendants.

## MEMORANDUM AND ORDER

PECKHAM, District Judge.

This lawsuit had its genesis when several members of the Palo Alto Police Department, acting pursuant to a warrant, engaged in a search of the offices of the *Stanford Daily*, Stanford University's campus newspaper. Defendants are members of the Palo Alto Police Department, the District Attorney for Santa Clara County, and one of his deputies, each named individually and in his official capacity. The plaintiff is the Stanford Daily, an unincorporated association,[1] and its student editors.

Defendants, throughout this litigation, have maintained that the search of the *Daily* office, although no one at the *Daily* was suspected of committing a crime, was an entirely legal act, and they further maintain that they would conduct such a search again under similar circumstances.

### I.

Pursuant to 42 U.S.C. § 1983 (1970) plaintiffs brought suit in this court seeking declaratory relief and an injunction. On October 5, 1972, this court ruled, as to those not suspected of a crime, third parties, that the warrant was insufficient to comply with the fourth amendment when it appears that there was available to law enforcement personnel an alternative course of conduct which could achieve the same end in a manner much less intrusive upon the concerns voiced in the fourth amendment.[2] In other words, the court ruled that the law enforcement personnel must explore the *subpoena duces tecum* alternative before obtaining and executing a warrant for the search of those not suspected of criminal activity.[3] During the pendency of the litigation, this court was surprised at the dearth of litigation on the question of the fourth amendment rights of third parties. *Id.* at 127. One possible explanation was that investigative agencies normally use the subpoena alternative to achieve their objective in examining materials of third parties.

---

1. See Fed.Rules Civ.Pro., Rule 17(b); Cal. Code Civ.Pro. § 388(a) (West 1973).

2. Memorandum and Order reported 353 F. Supp. 124 (N.D.Cal.1972); Note, 86 Harv. L.Rev. 1317.

3. The court granted declaratory relief only but left open the possibility that an injunction might issue if plaintiffs presented to the court facts which would indicate that declaratory relief alone was not sufficient to protect plaintiffs' rights as declared.

Another possible explanation is that a defense to an action for monetary damages under 42 U.S.C. § 1983 brought against a law enforcement officer is that the officer acted in good faith. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).[4] If a party chooses to vindicate his fourth amendment rights which have allegedly been violated by a law enforcement officer, albeit in good faith, he is relegated to declaratory and injunctive relief.[5] The aggrieved person must be prepared to make the kind of showing which would warrant equitable relief. And lastly, for no pecuniary gain, he is required to engage in extensive litigation at considerable cost including attorney's fees, just for the satisfaction of having a court determine that the police violated the Constitution, and possibly obtaining an injunction if he can show that there is a real possibility the violation may reoccur.[6]

It is not surprising that when faced with the costs of interminable litigation against a city and county with relatively unlimited resources measured against the limited satisfaction obtained when and if relief is finally given, many potential plaintiffs are unwilling to take on the task of "fighting City Hall." At a time when legal costs, particularly attorney's fees are rising, third party rights protected by the fourth amendment, while existing in theory, in practice have no meaningful effect.

This situation may be contrasted to a criminal defendant, who has a relatively adequate remedy by way of a suppression hearing to determine the legality of the search. See Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The criminal defendant, unlike the third party, has an extraordinary incentive to vindicate his fourth amendment right to obviate a successful prosecution against him. And if he cannot afford counsel, one will be appointed for him.

The rights expressed in the fourth amendment are in constant tension with expedient law enforcement. Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). But it is the job of every citizen to insure that overzealous law enforcement personnel do not compromise the high values placed on privacy in our society. It is important to remember that the fourth amendment protects all the people, and not just those suspected of a crime. It would be a cruel irony if those people who harbored contraband had an adequate incentive to pursue an effective remedy for violations of their fourth amendment rights, while those who engage in entirely legal activity, because of the economic realities of the cost of attorney's fees, must allow their constitutional rights to go unvindicated.

The plaintiffs have moved for an award of reasonable attorney's fees. For the reasons which follow, the motion is granted.

## II.

It has been the general view in this country, absent statutory direction, that attorney's fees are not ordinarily awardable as a cost of litigation.[7] In England, the courts have discretion to award a reasonable allowance for attorney's

---

4. See text accompanying note 19, infra.

5. Cf. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 408, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). See also Jackson v. Ogilvie, 426 F.2d 1333 (7th Cir.), cert. denied 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 64 (1970).

6. See Note, The Federal Injunction as a Remedy for Unconstitutional Policy Conduct, 78 Yale L.J. 143 (1968).

7. The American rule was originally adopted when counsel fees were awarded by courts as a fixed sum of money, pursuant to a schedule. In a period of rising prices the attorneys successfully abolished court fixed fees. Goodhart, Costs, 38 Yale L.J. 849, 854 (1929); Note, 77 Harv.L.Rev. 1135 (1964); Enrenzweig, Reimbursement of Counsel Fees and the Great Society, 54 Calif.L.Rev. 792 (1966).

fees since the court was to make the prevailing party whole.[8]

The English rule which awards attorney's fees as costs to the plaintiff or defendant, whoever prevails, also has the effect of promoting settlement. The generally accepted American view is that recourse to litigation is not wrong, and that the party who does not prevail ought not to be penalized for his resort to the courts to vindicate his rights.[9] It is indeed ironic that the very purpose of the general American rule, not to deter litigation, is in many cases having the exact opposite effect. The inability to get attorney's fees directly, or indirectly, through damage awards, has the effect of deterring many potential plaintiffs from seeking redress in the courts. *See* Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed. 2d 1263 (1969) (per curiam.)[10] While legal aid offices[11] and contingent fee arrangement, where damages would lie,[12] have provided some legal services for those who could not otherwise afford them, there is no doubt that new methods of financing legal services to all levels of society must be explored.[13] Accordingly many commentators have questioned the continuing vitality of the American rule, and its effect on the delivery of legal services. Many have suggested a liberalization of the strict American rule.[14]

## III.

To ameliorate the inequities, both Congress and the courts have made inroads into the strict application of the American rule. It is now beyond dispute that federal courts have equitable powers to award attorney's fees in appropriate cases. Sprague v. Ticonic National Bank, 307 U.S. 161, 166, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). It is also

---

8. 6 J. Moore, Federal Practice 1703.

9. Note, 77 Harv.L.Rev. 1135 (1964). Nor are attorney's fees directly awardable as damages. Day v. Woodworth, 13 How. 363, 14 L.Ed. 181 (1851); 6 J. Moore, Federal Practice 1704.

10. The Court in *Piggie Park* intimated no view, nor is the legislative history clear as to whether a party who successfully defends an action under Title II of the Civil Rights Act of 1964, § 204(a), 42 U.S.C. § 2000a-3 would be a prevailing party. Nor whether if a prevailing party, different factors might guide a court's discretion. See Northcross v. Memphis Bd. of Ed., 412 U.S. 427, 93 S. Ct. 2201, 37 L.Ed.2d 48 (1973).

11. There are approximately 355,000 attorneys licensed to practice in the United States, and only 2,500 work for legal services. Prepaid Legal Services, transcript of proceedings of a national conference held by ABA Special Committee on Prepaid Legal Services held in Washington, D.C., April 27-29, 1972 at 1. *See also* Brief of National Legal Aid and Defenders Association, Amicus Curiae in La Raza v. Volpe, 73-1145 (9th Cir., appeal filed Dec. ——, 1972). A former Director of the Office of Economic Opportunity estimates that legal services meet only about 28% of poor people's needs. Testimony of Frank Carlucci, hearings on H.R. 40, H.R. 185, H.R. 357, etc. before the House Committee on Education and Labor, 92 Cong., 1st Sess. pt. e at 1866-67 (1971).
See J. Falk and S. Polack, Political Interference with Publicly Funded Lawyer: The CRLA Controversy and the Future of Legal Services, 24 Hast.L.Rev. 599 (1973).

12. The principles which underlie the contingent fee arrangement may have some bearing in determining what amount constitutes a reasonable attorney's fee where Congress or the courts provide for such an award. See Disciplinary Rule 2-106 of the Code of Professional Responsibility of the American Bar Association.

13. See McLaughlin, The Recovery of Attorney's Fees: A New Method of Financing Legal Services, 40 Ford.L.Rev. 761 (1972): See Sen.Rep. 93-146 accompanying S.Res. 101, 93rd Cong., 1st Sess. (1973) authorizing a new subcommittee of the Senate Judiciary Committee to inquire into, inter alia, new methods of financing the delivery of legal services.

14. Ehrenzweig, *supra*; Stoebuck, Counsel Fees Included in Costs: A Logical Development, 38 U.Colo.L.Rev. 202 (1966); McLaughlin, *supra*; Kuenzel, The Attorney's Fee: Why not a Cost of Litigation; 49 Iowa L.Rev. 75 (1963); Note, Attorney's Fees: Where Shall the Ultimate Burden Lie? 20 Van.L.Rev. 1216 (1967); Note, The Allocation of Attorney's Fees After Mills v. Electric Auto Lite Co., 38 U.Chi.L. Rev. 316 (1971).

well established that ". . . in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorney's fees when the interest of justice so require." Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Mills v. Electric Auto-Lite, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

The only question for a district court is then, whether in the exercise of its equitable powers, the interest of justice requires that fees be shifted. There are two parts to this question. First, is this the type of case in which the court has discretion to award attorney's fees as costs? And if so as a matter of the court's discretion, is this an appropriate case?

A. *Type of case.*

In Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) the Court held that attorney's fees can be awarded when the judgment results in a "common fund" for the plaintiffs or for the class. In Mills v. Electric Auto-Lite, 396 U.S. 375, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970), the Court approved the award of attorney's fees to shareholders who succeeded in setting aside a corporate merger. The Court extended the scope of the common fund rationale by holding that no pecuniary benefit need be demonstrated. *Id.* at 393, 90 S.Ct. 616. As this court pointed out in La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal.1972), *Mills* represents both the defensive and affirmative use of the Court's equitable powers. Defensive, to prevent unjust enrichment of free riders and affirmative or offensive to promote the effective implementation of the Congressional objective of fair and informed corporate suffrage. *Id.* at 98.

In Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed. 2d 1263 (1968), in interpreting the scope of the reasonable attorney's fee provision under Title II of the Civil Rights Act of 1964, 204(b), 42 U.S.C. §

2000a–3(b), the Court found that fees were awardable as costs "not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II." In essence, the Court found, in determining Congress's objective, that the general American Rule, not to award attorney's fees as costs, was having the opposite effect from its intent. Far from promoting a judicial determination of rights, at least in the equitable relief area, the policy of not awarding fees was an obstacle to a judicial determination of rights.

*Mills* and *Piggie Park* touched responsive chords, and the federal judiciary responded in a myriad of decisions indicating that where a plaintiff seeks only equitable relief, that strict application of the American rule no longer makes sense as a policy to promote access to courts. Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Northcross v. Memphis Board of Ed., 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973); Sims v. Amos, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215, aff'g 340 F. Supp. 691 (M.D.Ala.1972); Knight v. Auciello, 453 F.2d 852 (1st Cir. 1973); McEnteggart v. Cataldo, 451 F.2d 1109 (1st Cir. 1971); Gartner v. Soloner, 384 F.2d 348 (3rd Cir. 1967); Brewer v. School Bd., 456 F.2d 943 (4th Cir. 1972), cert. denied, 406 U.S. 933, 92 S. Ct. 1778, 32 L.Ed.2d 136; Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971); Callahan v. Wallace, 466 F. 2d 59 (5th Cir. 1972); Cooper v. Allen, 467 F.2d 836 (5th Cir. 1972); Donahue v. Staunton, 471 F.2d 475, 482 (7th Cir. 1972); Yablonski v. United Mine Workers, 151 U.S.App.D.C. 253, 466 F.2d 424 (1972), cert. denied, 412 U.S. 918, 93 S. Ct. 2729, 37 L.Ed.2d 144 (1973); La Raza Unida v. Volpe, 57 F.R.D. 94 (N. D.Cal.1972); Johnson v. San Francisco Unified School District, Civ.No.70–1331 SAW (N.D.Cal., decided Sept. 12, 1972); Ross v. Goshi, 351 F.Supp. 949 (D. Haw.1972); Jinks v. Mays, 350 F.Supp.

1037 (N.D.Ga.1972); Newman v. Alabama, 349 F.Supp. 278 (M.D.Ala.1972); Wyatt v. Stickney, 344 F.Supp. 408 (M.D.Ala.1972); NAACP v. Allen, 340 F. Supp. 703 (M.D.Ala.1972); Shull v. Columbus Mun. Separate School Dist., 338 F.Supp. 1376 (N.D.Miss.1972); Local 4076 United Steelworkers v. United Steelworkers, 338 F.Supp. 1154 (W.D.Pa.1972); Moore v. Knowles, 333 F.Supp. 53 (N.D.Tex.1971); Brown v. Ballas, 331 F.Supp. 1033 (N.D.Tex. 1971); Hammond v. Housing Authority and Urban Renewal Agency of Lane County, 328 F.Supp. 586 (D.Or.1971); Lyle v. Teresi, 327 F.Supp. 683 (D. Minn.1971).

While various rationales have been given for including attorney's fees as costs, the courts are in essence making a judgment that including attorney's fees as costs is an additional remedy necessary to effectuate the congressional underpinnings of a substantial program.

The equitable federal powers to imply remedies is not new. Act of May 8, 1792, § 2, 1 Stat. 276; Wright, Law of Federal Courts, 257 (2d ed. 1970).[15] As Justice Harlan wrote, concurring in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U. S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971):

> "Thus, in suits for damages based on violations of federal statutes lacking any express authorization of a damage remedy, this Court has authorized such relief where, in its view, damages are necessary to effectuate the congressional policy underpinning the substantive provisions of the statute. J. I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964);

Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 213, 65 S.Ct. 235, 237, 89 L.Ed. 187 (1944). Id. at 402, 91 S.Ct. at 2008.

The Court in Bivens held that in order to protect encroachment by federal officers on rights protected by the fourth amendment, it was necessary to imply a particular remedial mechanism, that is, suits for damages.

In J. I. Case v. Borak, supra, the Court " 'implied'—from what can only be characterized as an 'exclusively procedural provision' affording access to a federal forum . . . a private cause of action for damages for violation of § 14(a) of the Securities Exchange Act of 1934, 48 Stat. 895, 15 U.S.C. § 78n(a)." Bivens, 403 U.S. at 403 n.4, 91 S.Ct. at 2008. In Mills, the Court found that the policies expressed by Congress in the same statute also required that an award of attorney's fees be made because this would "provide an important means of enforcement of the proxy statute." 396 U.S. at 396, 90 S.Ct. at 628.

In Bivens, after recognizing the inherent equitable power to imply remedies, the late Justice Harlan passed to the question of whether a damage remedy would be appropriate. In reaching the conclusion that implying a damage action is appropriate in the fourth amendment area, he relied on the fact that no other alternative remedy was provided to insure the vindication of the right in question, and that the right ranked sufficiently high on the social scale that it was worthy of protection.[16]

In Bivens, Harlan concluded that the fourth amendment area was peculiarly suited for judicial supervision and reme-

15. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Deckert v. Independence Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940); Mitchell v. De Mario Jewelry, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); Swann v. Board of Ed., 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 601 (1971).

16. Congress has by statute recognized that certain classes of rights rank high on the nation's social priorities and have given to plaintiffs the additional remedy of fee shifting. See, e. g., 42 U.S.C. § 2000a–3(b) (public accommodations); 42 U.S.C. § 2000e–5(k) (equal employment); 42 U.S.C. § 3612(c) (fair housing). See also Education Amendments of 1972 § 718, 41 U.S.L.W. 45 (June 23, 1972). Compare Opinion of the Court in Hall v. Cole, supra, with dissent of White, J. arguing that internal labor disputes were not of sufficient public concern to imply an attorney's fee award.

dy formulation. Id. 403 U.S. at 405–410, 91 S.Ct. 1999. *See* Mapp v. Ohio, *supra. See also* Bell v. Hood, *supra*. To the plaintiffs in *Bivens* the exclusionary rule was irrelevant and injunctive relief was unlikely. Additionally he found that the rights protected by the fourth amendment ranked at least as high on our social value as the rights of stockholders defrauded by misleading proxies. *Bivens*, 403 U.S. at 411, 91 S.Ct. 1999. *See* J. I. Case v. Borak, *supra*, giving private damage remedy, and *Mills, supra*, awarding attorney's fees as costs thereby insuring that the right of action given in *J. I. Case Co.*, will in fact be brought.

Applying the criteria for the appropriate use of the court's equitable power to imply remedies to the instant motion, it would seem fee shifting is appropriate. First, there is in the fourth amendment no detailed pattern of remedies such that one could fairly draw the inference that the remedies provided were complete. *See* Fleishmann Distilling Corp. v. Maier Brewing Co., 386 U. S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). *See also Bivens, supra*. The absence of a "meticulously detailed" pattern of remedies has been one signal that attorney's fees may be awarded as costs. *Mills*, 396 U.S. at 391, 90 S.Ct. 616. *Accord* Hall v. Cole, *supra;* Lee v. Southern Homes, 444 F.2d at 145; La Raza Unida v. Volpe, 57 F.R.D. at 99.

Like *La Raza*, no remedial action can be expected from public officials, as they are named as defendants in the action. Moreover, in *J. I. Case Co., supra*, and *Mills, supra*, the Court was not content to rely solely on public enforcement by the Securities Exchange Commission for the important rights proclaimed in the statute.

■ Additionally, 42 U.S.C. § 1983 and its jurisdictional concomitant, 28 U.S.C. § 1343(3) represents congressional indication that federal courts should use their equitable powers to insure vindication of the rights protected by the Constitution and laws from infringement by those acting under color of state law, by implying an award of attorney's fees as costs. Jinks v. Mays, 350 F.Supp. 1037 (N.D.Ga.1972). *See* Donahue v. Stanton, 471 F.2d 475, 482 (7th Cir. 1972); N.A.A.C.P. v. Allen, 340 F.Supp. 703 (N.D.Ala.1972). The *raison d'etre* of 42 U.S.C. § 1983 is to encourage the vindication of constitutional rights, to promote litigation of the rights involved, and to give the courts leeway to fashion appropriate remedies. *Cf*. 42 U.S.C. § 1988.

As to placing a high social order on the rights in question, there can be no doubt as to the importance of the fourth amendment. The Court in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) recently recalled the words of Justice Jackson on his return from the Nurenberg Trials:

These [Fourth Amendment rights], I protest, are not mere second-class rights but belong in the catalog of indispensible freedoms. Among the deprivation of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government. Brinegar v. United States, 338 U.S. 160, 180, 69 S.Ct. 1302, 1313, 93 L.Ed. 1879 (Jackson, J., dissenting).

■ Accordingly this court feels that in equitable suits to remedy violations of fourth amendment rights of those not suspected of criminal activity, an award of attorney's fees as costs is within the court's power and responsibility. Where as here fee shifting is necessary to insure the vindication of important constitutional rights [17] and appropriate because of the inadequate remedies otherwise available, because it is consistent with a remedy increasingly furnished by Congress, and because of the high social value placed upon the rights involved, an

---

17. It has been argued that the Daily is a clearly identifiable plaintiff, so that even ab-

sent fee shifting these types of plaintiffs, not representatives of a class, might have

award of attorney's fees as costs is essential, lest these important rights be relegated to a mere platitude.

B. *Appropriateness of Fees in This Case.*

 Having determined that this is the type of case in which an award of attorney's fees as costs might be appropriate, the matter of the exercise of the court's discretion is not difficult.[18] Even when no statute is involved, fees should ordinarily be awarded as costs in the appropriate type of case, unless there is an affirmative, articulated reason for the denial. Cooper v. Allen, 467 F.2d 836 (5th Cir. 1972). *See* Northcross v. Memphis Bd. of Ed., *supra* (statutory authorization).

 Here counsel for plaintiff effectively represented his client and aided the court in an area scant with precedent to guide its decision. Accordingly this court finds that, this is the type of case in which the court has discretion to award the fees as costs, and this is an appropriate case for the exercise of that discretion.

### IV.

Lastly, the defendants argue that they may assert as defense to the assessment of attorney's fees as costs, the legal defense to an action for monetary damages that the law enforcement acted in good faith and upon probable cause.[19] Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Anderson v. Reynolds, 342 F.Supp. 101 (D.Utah 1972) (policeman); Ney v. State of California, 439 F.2d 1285, 1287 (9th Cir. 1971); Dodd v. Spokane County, Washington, 393 F.2d 330 (9th Cir. 1968) (District Attorney in his investigative function).

 Where an award of attorney's fees is made as an element of the costs of equitable litigation incident to the vindication, of otherwise unremediable constitutional rights, the fact that a prior action was taken in good faith would not seem relevant. An award for attorney fees and an award for damages have historically been separated. *See* Day v. Woodworth, 13 How. 363, 14 L. Ed. 181 (1851); 6 J. Moore, Federal Practice 1704. Unlike damages an award of attorney's fees is not imposed in any way to penalize, stigmatize, or punish the defendants for wrongdoing. As this court said in *La Raza, supra:*

> We cannot emphasize enough that in granting this motion, the purpose is not to saddle the losing party with the financial burden in order to punish him, rather we shift the financial burden in order to effectuate a strong Congressional policy. Accord Mills, 396 U.S. at 396–397, 90 S.Ct. 616. *Id.* 57 F.R.D. at 102.

 Moreover an award of attorney's fees as cost, at least in California, will not have the undesirable effect of hampering zealous law enforcement which so concerned the Court in *Pierson, supra.* For it is the law in this state that there is a mandatory duty of the City Attorney, or the County Counsel to defend the policemen or the district attorney. Any judgment against the public official shall be paid by the public entity which employed the individual, provided that he was acting within the scope of his employment at the time. Cal.Gov't. Code § 825 et seq. As such the action may proceed without any personal involvement on the part of the individual. As the court said in Sinclair v. Arne-

---

sufficient incentive to litigate the matter. First it must be noted that other courts have not required class action status as a prerequisite to fee shifting. *See* Donohue v. Stanton, 471 F.2d 475 (7th Cir. 1972). Nor is class action status a requirement under any of the statutory schemes provided by Congress. See note 16, *supra.* Second, the Daily was fortunate enough to have a law professor on the Stanford campus willing to bring the litigation. But this Court has already indicated its unwillingness to rest the

vindication of important rights on the chance that some attorney, public interest law firm, or legal aid agency will be willing to represent the plaintiff without hope of remuneration. *La Raza,* 57 F.R.D. at 101. *See also Id.* at 98 n. 6.

18. Kelly v. Guinn, 456 F.2d 100 (9th Cir. 1970).

19. *See* Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 456 F. 2d 1339 (2d Cir. 1972) (on remand).

bergh, 224 Cal.App.2d 595, 36 Cal.Rptr. 810 (1964):

> With such protection afforded, the public can expect that its laws will be zealously enforced without any hesitation occasioned by consideration of possible personal involvement in defending resulting litigation. *Id.* at 597–598, 36 Cal.Rptr. p. 813.

See also 42 U.S.C. § 1988; Hesselgesser v. Reilly, 440 F.2d 901 (9th Cir. 1971) cited with approval in Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

■ Accordingly this court finds that the legal defense of good faith enforcement of the law, found not to be abrogated by 42 U.S.C. § 1983, as against an action seeking monetary damages, has no place here where equitable relief is sought to declare rights and enjoin further illegal action. This is especially so in California where the public, and not the individual officer, will bear the responsibility for litigation and pay any judgment for attorney's fees rendered against the law enforcement personnel.

The motion for an award of reasonable attorney's fees as costs is granted.