The Honorable Kay Ivey
Governor of Alabama
Alabama State Capitol
Montgomery, Alabama 36130
Dear Governor Ivey:
*19 We have received your letter of February 9, 2018, requesting an advisory opinion from the individual Justices of this Court as to the Governor's obligation under the following language from § 46(b), Ala. Const. 1901: "Whenever a vacancy occurs in either house of the legislature the governor shall issue a writ of election to fill such vacancy for the remainder of the term."
According to your letter, the circumstances giving rise to the request involve "the reported death, on January 16, 2018, of House District 83 Representative George Bandy." According to the request, "[o]nly nine months remain in Representative Bandy's term." "[T]he Secretary of State has advised [the Governor] that a special election would likely occur no earlier than June of this year. The winner of any special election would thus serve for a mere four or five months before leaving office."
You requested an advisory opinion on the following questions:
"(1) Does the Governor bear any duty under the constitution's legislative-vacancy provision before receiving formal notice of a legislator's death from the appropriate probate judge? See Ala. Const. [1901], § 46 ; Ala. Code [1975,] § 36-9-6.
"(2) Does the constitution's legislative-vacancy provision impose on the Governor an absolute duty to call a special election whenever a vacancy occurs regardless of how much time remains in the term of office? See Ala. Const. [1901,] § 46.
"(3) If a special election must be called to fill a legislative vacancy only when practicable, will this Court defer to the Governor's reasonable judgment about the practicability of calling any particular special election? See Ala. Const. [1901,] § 46."
Section 12-2-10, Ala. Code 1975, states that "[t]he Governor, by a request in writing, ... may obtain a written opinion of the justices of the Supreme Court of Alabama or a majority thereof on important constitutional questions." The Justices have concluded that "[a]dvisory opinions can be given to a Governor where the Governor is required to act on a law which raises constitutional issues." Opinion of the Justices No. 219, 294 Ala. 604, 605, 320 So.2d 622, 623 (1975) ; see also Opinion of the Justices No. 274, 394 So.2d 957, 959-60 (Ala. 1981) ; Opinion of the Justices No. 169, 270 Ala. 147, 148, 116 So.2d 588, 589 (1959) ; and Opinion of the Justices No. 70, 247 Ala. 663, 26 So.2d 103 (1946). But, " 'we may answer only narrow questions directed to specific provisions of the State or Federal Constitution.' " Opinion of the Justices No. 341, 632 So.2d 478, 482 (Ala. 1994) (quoting Opinion of the Justices No. 271, 384 So.2d 1056, 1058 (Ala. 1980) ). The Justices may not "answer solely legal questions in advisory opinions." Opinion of the Justices No. 228, 336 So.2d 164, 165 (Ala. 1976).
As stated in Opinion of the Justices No. 1, 209 Ala. 593, 96 So. 487 (1923) :
"Interpreting the [advisory-opinion] act [now codified at § 12-2-10 ] according to its manifest effects, these conclusions must, of necessity, prevail: (a) That the act does not at all contemplate the advice or the advisory opinions of the Justices upon any matter relating to the wisdom, desirability, or policy of prospective legislative or executive action; (b) that the merely advisory opinions contemplated are those of the individual Justices, not of the Supreme Court of Alabama in its judicial capacity; (c) that specific inquiries, within the intent of the act, must involve or concern concrete, important constitutional questions upon *20 matters or subjects of a general public nature, as distinguished from questions involved in the ascertainment or declaration of private right or interest; (d) and that responses to questions within the purview of the act are designed to be advisory, consultative only, not concluding or binding the Governor or the House or Houses propounding inquiries or the Justices responding thereto.
"....
"The performance by the Justices of the function the act contemplates is nonjudicial; this for the obvious reason that advisory opinions given do not conclude or vindicate any right or remedy, result in no judgment or decree, bind no one whatsoever."
209 Ala. at 594-95, 96 So. at 488-89 ; see also State ex rel. Bozeman v. Hester, 260 Ala. 566, 570, 72 So.2d 61, 63 (1954) ; and Opinion of the Justices No. 25, 226 Ala. 565, 569, 148 So. 107, 111 (1933). Opinion No. 1 adds that
"[n]either the Legislature nor the Executive have or enjoy any prerogative to ignore or violate the Constitutions. Indeed, obedience to the Constitutions' provisions must be regarded as the desire, the purpose and intent of every department and officer in the government. The practice thus established evinces the highest permissible form of precautionary procedure to preserve constitutional government by invoking the advice of those thought to be peculiarly qualified to give, in advance of action, advice in respect of the Constitution's prescriptions; thereby manifesting a quickening sense of responsibility for submission and conformity to the Constitutions on the part of all who owe that supreme duty to the governments."
209 Ala. at 598-99, 96 So. at 493.[1]
In light of the foregoing, the undersigned Justices respectfully reply as follows to the questions designated:
Question (1)
Section 46 (b) states: "Whenever a vacancy occurs in either house of the legislature the governor shall issue a writ of election to fill such vacancy for the remainder of the term." Section 46 (b) discusses the duty of the Governor "whenever a vacancy occurs"; it contains no qualifying language as to the form or source of notice of that vacancy. A vacancy either exists or it does not, and the Governor either has notice of such a vacancy or the Governor does not. You have informed us that you are aware of the death of Representative George Bandy, and your request for an advisory opinion is premised upon the fact of his death. Thus, no factual controversy exists as to whether Representative George Bandy is deceased.
Section 36-9-1, Ala. Code 1975, states that "[a]ny office in this state is vacated ... [b]y the death of the incumbent." The language of § 36-9-6, Ala. Code 1975, to which you refer in your letter-"[o]n the death ... of any member of the Legislature, the judge of probate of the county in which such officer at the time of his death resided shall give notice *21 thereof to the Governor"-prescribes the duty of the probate judge as to the giving of notice of death to the Governor; that language does not limit the Governor's constitutional obligation under § 46 (b), which arises "[w]henever a vacancy occurs." In short, § 46 (b) directs the Governor to "issue a writ of election" "[w]henever a vacancy occurs in either house of the legislature," not merely upon receipt of notice from the probate court of the legislator's death.[2]
Question (2)
Section 46 (b) states that whenever a vacancy occurs in the legislature, the Governor "shall issue a writ of election." As to the meaning of "shall" in § 46 (b), " 'the long-settled and fundamental rule binding this Court in construing provisions of the constitution is adherence to the plain meaning of the text.' " Town of Gurley v. M & N Materials, Inc., 143 So.3d 1, 13 (Ala. 2012) (quoting Jefferson Cty. v. Weissman, 69 So.3d 827, 834 (Ala. 2011) ). " ' "Constitutions are the result of popular will, and their words are to be understood ordinarily as used in the sense that such words convey to the popular mind" (6 Am. & Eng. Ency. Law, 924, 925).' " Jefferson Cty. v. Weissman, 69 So.3d at 834 (quoting Hagan v. Commissioner's Court of Limestone Cty., 160 Ala. 544, 562, 49 So. 417, 423 (1909) ).
" ' "In construing a constitutional provision, the courts have no right to broaden the meaning of words used and, likewise, have no right to restrict the meaning of those words.' " This Court is " 'not at liberty to disregard or restrict the plain meaning of the provisions of the Constitution.' "
City of Bessemer v. McClain, 957 So.2d 1061, 1092 (Ala. 2006) (quoting City of Birmingham v. City of Vestavia Hills, 654 So.2d 532, 538 (Ala. 1995), quoting in turn McGee v. Borom, 341 So.2d 141, 143 (Ala. 1976) ).
In Ex parte Prudential Insurance Co. of America, 721 So.2d 1135 (Ala. 1998), this Court noted:
" 'Words used in [a] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed intent of the Legislature must be given effect.'
" Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County, 589 So.2d 687, 689 (Ala. 1991) (citations omitted). The word 'shall' is clear and unambiguous and is imperative and mandatory. Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa, supra ; Taylor v. Cox, 710 So.2d 406 (Ala. 1998) ; Ex parte First Family Financial Services, Inc., 718 So.2d 658 (Ala. 1998) (on application for rehearing) (interpreting the word 'shall' as used in § 6-3-21.1[, Ala. Code 1975 ] ). The word 'shall' has been defined as follows:
" 'As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term "shall" is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. The word in ordinary usage *22 means "must" and is inconsistent with a concept of discretion.'
"Black's Law Dictionary 1375 (6th ed. 199[0] )."
721 So.2d at 1138 (citations omitted).
The same rule applies to constitutional provisions: "The word 'shall' is considered presumptively mandatory unless something in the character of the provision being construed requires that it be considered differently." Hornsby v. Sessions, 703 So.2d 932, 939 (Ala. 1997) (discussing provision of Amendment No. 328, Ala. Const. 1901, now §§ 139 - 161, Ala. Const. 1901 (Off. Recomp.) ); see also Thompson v. Town of Luverne, 125 Ala. 366, 369, 29 So. 326, 326 (1900) (discussing "the mandatory requirement of § 2, Art. IV of the constitution : 'Each law shall contain but one subject, which shall be clearly expressed in its title.' ").
No language in § 46 (b) supports the conclusion that the term "shall" as used therein has a meaning other than the presumed imperative meaning. Also, the plain meaning of "[w]henever a vacancy occurs" and "to fill such vacancy for the remainder of the term" in § 46 (b) leaves no room for construing "shall" to have any meaning other than the imperative meaning.
Further, courts addressing similar language in the Federal Constitution have concluded that the executive's obligation is mandatory, i.e., that "shall" means "shall." As stated in Jackson v. Ogilvie, 426 F.2d 1333 (7th Cir. 1970) :
"The issue at the heart of the instant case is whether the constitutional provision[, U.S. Const. art. I, § 2,] that when vacancies happen the Executive Authority of the state 'shall issue Writs of Election to fill such Vacancies' is mandatory. The language is mandatory according to the ordinary meaning of its terms. We find no persuasive reason for reading it in a directory sense. Indeed it serves to make clear that the people's right to chosen representation is not limited to exercise at a biennial election, but is a continuing right which is not to be defeated by death of a Representative once chosen, or other cause of vacancy.
"In a debate in the House of Representatives in 1804 concerning the validity of a special election questioned on the ground of shortness of notice, Representative Findley stated in support of the prompt holding of the election (held five months before the expiration of the term) that, 'the Executive shall issue writs, is the language of command; it renders the issuing of the writs an indispensable duty.'
"The Attorney General points out that Article I, § 4[, U.S. Const.,] provides: 'The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations....' Congress has provided in 2 U.S.C. § 8 that the time for holding an election for a Representative to fill a vacancy may be prescribed by the laws of the state.
"There has been no challenge to the propriety of the Illinois laws which require a total period of 162 days from call to special election. Such provisions would render it useless for the Governor to issue a writ of election where the vacancy occurred 162 days or less before the end of a term, and might well excuse issuance where the vacancy occurred earlier but where the period of possible service could truly be deemed de minimis. Except in those instances the delegation to the state legislature of this power over procedure does not, in our opinion, alter the character of the Governor's duty to issue a writ of election.
*23 "Although the state legislatures are not empowered to decide whether or not a vacancy in the office of Representative is to be filled, we note that the Illinois statutes have provided for many years that when such a vacancy occurs, the Governor 'shall issue a Writ of Election' to the county clerks of the appropriate counties. On November 14, 1917 the Attorney General of Illinois advised the Governor, with respect to a vacancy in the office of Representative, 'In this instance, a public right is involved ... the right of the people of the congressional district to be represented in the House of Representatives in Congress. To hold that the word "shall" is directory, merely, is to put it within the power of the Governor to deprive the people of the congressional district of that right.'
"We hold that defendant had the duty, at the time of the death of Representative Ronan, to issue a writ of election to fill the vacancy. The fact that an election could not be held until January 23, 1970 and that the successor could have served little more than eleven months at the most, would not, in our opinion, justify failure to issue the writ. The Governor's duty, we think, continued, notwithstanding the fact that delay may eventually render the calling of a special election of so little use that the duty will no longer be enforceable.
"....
"We note that a general election will be held November 3, 1970, and that a Representative will then be elected for the term beginning January 3, 1971. We are not aware of any reason why a special election could not be held the same day for a Representative to fill the vacancy for the balance of the term which began January 3, 1969. Such a special election (and the primary which would have to precede it) could be called as late as May 25. We are not prepared to say as a matter of law that representation from the time the results of the November 3 election will be determined to January 3, 1971 is de minimis."
426 F.2d at 1336-37 (footnotes omitted).
A similar discussion appears in American Civil Liberties Union of Ohio, Inc. v. Taft, 385 F.3d 641 (6th Cir. 2004) :
"[W]e conclude that Article I, section 2, clause 4 is mandatory, requiring the state's executive to issue a writ to fill a vacancy in the House. We recognize that there may be instances where the time remaining in the congressional term is truly de minimis, thereby excusing the executive from issuing the writ, but the time involved in this case [between five and six months before the end of the term] cannot be considered de minimis.
"We also recognize that Article I, section 4, clause 1 gives states the discretion to determine the 'Times, Places, and Manner' of holding such elections, and that the states have valid interests in ensuring fair and reliable elections.... [L]egislative balancing between a state's interests in ensuring fair and reliable elections, and its citizens' rights to vote and to equal representation, is entitled to considerable deference. Ohio has exercised its discretion to determine the time, place, and manner of elections by enacting a comprehensive election code. Governor Taft complains of the expense, inconvenience, and possible inaccuracies that would have accompanied a special election held on November 5, 2002. We point out that the Ohio legislature, through its election code, has determined the length of time it considers necessary for conducting such a special *24 election. If the Ohio legislature determines that more time is needed to hold such an election, it may amend its election code, and should a need to review such provisions arise, we will accord them appropriate deference.
"Had Ohio's election code imposed requirements that made a special election an impossibility in this case, the ACLU would have been faced with the burden of proving those enacted requirements were unconstitutional. As Governor Taft concedes, however, it would have been possible to hold a special election that complied with the requirements imposed by the legislature in the election code to fill the vacancy in the Seventeenth District.
"In summation, we conclude that Article I, section 2, clause 4 imposed a mandatory duty upon Governor Taft to hold a special election to fill the vacancy in the District created by the expulsion of Traficant. Although there may be situations where an executive's duty is excused because the time remaining on the Congressional term is truly de minimis, this was not such a situation. While legislative balancing of the state's and its voters' interests is entitled to deference, a special election that complied with Ohio's election code could have been held in this case. Therefore, we hold that Governor Taft violated his duty to call a special election under Article I, section 2, clause 4."
385 F.3d at 649 (citations and footnotes omitted); see also Fox v. Paterson, 715 F.Supp.2d 431, 434 (W.D.N.Y. 2010). The few state cases we have found also are in accord. See Jenkins v. Knight, 46 Cal. 2d 220, 224, 293 P.2d 6, 8 (1956) ; Furste v. Gray, 240 Ky. 604, 42 S.W.2d 889, 891 (1931) ; and People ex rel. Comerford v. Miller, 314 Ill. 474, 480, 145 N.E. 685, 687 (1924) ; see also State ex rel. Armstrong v. Davey, 130 Ohio St. 160, 164, 198 N.E. 180, 182 (1935).
Based on the foregoing, we conclude that § 46 (b) requires the Governor to "issue a writ of election."[3] However, as the Jackson and Taft courts correctly noted, any issue as to the timing of such an election is a different issue, one that is not before us.[4]
Question (3)
As is our practice, we respectfully decline to address your third question because it is a hypothetical question assuming an answer to the second question different from the answer given. See, e.g., Opinion of the Justices No. 341, 632 So.2d 478, 482 (Ala. 1994) ; and Opinion of the Justices No. 308, 449 So.2d 239, 240 (Ala. 1984).
In closing, we note that in light of the urgency of this matter we have answered your inquiries as quickly as possible. Our response is, of course, directed only to the language of § 46 (b) to which you referred, as is the practice.
*25 Respectfully submitted,
/s/ Lyn Stuart
Lyn Stuart
Chief Justice
/s/ Michael F. Bolin
Michael F. Bolin
/s/ Tom Parker
Tom Parker
/s/ James Allen Main
James Allen Main
/s/ A. Kelli Wise
A. Kelli Wise
/s/ Tommy Bryan
Tommy Bryan
/s/ Brady E. Mendheim, Jr.
Brady E. Mendheim, Jr.
Associate Justices
____________________
The Honorable Kay Ivey
Governor of Alabama
Alabama State Capitol
Montgomery, Alabama 36130
Dear Governor Ivey:
We have received your letter of February 9, 2018, requesting an advisory opinion from the individual Justices of this Court as to the Governor's obligation under the following language from Ala. Const. 1901, Art. IV, § 46 (b): "Whenever a vacancy occurs in either house of the legislature the governor shall issue a writ of election to fill such vacancy for the remainder of the term."
With one caveat, we agree with the advisory opinion issued today by the other Justices of this Court, in response to your request, that § 46 (b) establishes a mandatory duty requiring the Governor to issue a writ of election to fill a vacancy created by the death of any member of the legislature, notwithstanding the lack of formal notice of such death required by Ala. Code 1975, § 36-9-6. Specifically, we express no opinion regarding whether the "de minimis" doctrine addressed by federal court decisions applying the Federal Constitution in factually similar cases is pertinent when this Court is reviewing the requirements of the Alabama Constitution. It is clear to us that such a de minimis doctrine would have no application here, and we find it unnecessary to address its applicability or parameters. In our view, under the facts presented, compliance with § 46 (b) does not require a useless, futile, or impossible act.
Respectfully submitted,
/s/ Greg Shaw
Greg Shaw
/s/ William B. Sellers
William B. Sellers
Associate Justices

We have a long-standing policy of declining a request for an advisory opinion on a local matter. Nevertheless, we "have addressed questions concerning local matters when 'necessary to decide such matters in developing rationale to answer other questions of an important constitutional nature which involved general laws.' " Opinion of the Justices No. 383, 925 So.2d 193, 196 (Ala. 2006) (quoting Opinion of the Justices No. 304, 436 So.2d 832, 834 (Ala. 1983) ). Although the factual circumstances prompting your questions concern a vacancy in a single legislative seat, the questions relate to the Governor's duty under the Alabama Constitution as to the calling of a special election. That duty arises from a general law of statewide concern and application.

Obviously, the Governor could not be called upon to act before he or she knows a vacancy exists, but you have indicated that you are aware of the fact of Representative George Bandy's death and thus of the vacancy of his legislative seat.

Of course, as the Jackson and Taft courts acknowledge, "the law does not require the doing of a useless or futile act." State ex rel. Garrow v. Grayson, 220 Ala. 12, 24, 123 So. 573, 584 (1929) ; see also, e.g., Citizens' Bank & Trust Co. v. Turner, 23 Ala. App. 23, 25, 122 So. 311, 312 (1928) ; and Shelton v. State, 73 Ala. 5, 10 (1882). Thus, no special election would be required if that election could not be held, and the elected legislator seated, before the expiration of the remainder of the term in which the vacancy occurs. See Jackson, supra ; Taft, supra.

It would appear the Governor has broad discretion pursuant to law as to the timing of any special election. See Ala. Code 1975, § 17-15-2 ("All special elections shall be held on such day as the Governor may direct.").