NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

United Steelworkers of America, AFL–CIO/R, Intervenor,

Peninsula Shipbuilders' Association, Amicus Curiae,

Peninsula Chamber of Commerce, the Progress Committee of Newport News, and the Peninsula Industrial Council, Amicus Curiae,

Commonwealth of Virginia, Amicus Curiae.

No. 78–1900.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 22, 1979.

Decided March 2, 1979.

---

Andrew M. Kramer, Washington, D. C. (Deborah Crandall, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D. C., on brief), for petitioner.

Standau E. Weinbrecht, N.L.R.B., (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John D. Burgoyne, Assistant Gen. Counsel, James Y. Callear, N.L.R.B., Washington, D. C., on brief), for respondent.

Carl B. Frankel, Pittsburgh, Pa. (Bredhoff, Gottesman, Cohen & Weinberg, Washington, D. C., Bernard Kleiman, Chicago, Ill., on brief), for intervenor.

(E. D. David, Jones, Blechman, Woltz & Kelly, P.C., Newport News, Va., on brief), for amicus curiae Peninsula Shipbuilders' Association.

(Alvin B. Fox, Ellenson, Fox & Wittan; B. M. Millner, Marshall, Blalock, Garner & Millner, Newport News, Va., on brief), for amicus curiae Peninsula Chamber of Commerce Progress Committee for Newport News Peninsula Industrial Council.

(Marshall Coleman, Atty. Gen. of Virginia, James E. Moore, Asst. Atty. Gen., Richmond, Va., on brief), for amicus curiae Commonwealth of Virginia.

Before BUTZNER, WIDENER and PHILLIPS, Circuit Judges.

PER CURIAM:

Newport News Shipbuilding and Dry Dock Company petitions for review of an

order of the National Labor Relations Board finding violations of §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act,[1] based upon the company's refusal to bargain with the United Steelworkers of America following the Board's certification of the Steelworkers as the exclusive bargaining representative of the company's production and maintenance employees. We deny the company's petition to set aside the election. Nevertheless, because we think the Board erred in certifying the Steelworkers without conducting a post-election hearing on a substantial and material issue bearing on the fairness of the election, we remand the case to the Board for a hearing on that specific issue.

## I

The company operates a ship construction, rebuilding, and maintenance yard in Newport News, Virginia. For many years its production and maintenance employees have been represented by the Peninsula Shipbuilders Association (PSA). In December, 1977, the Steelworkers filed a petition with the Board seeking to displace the PSA as the bargaining representative of the production and maintenance employees. Pursuant to a stipulation for certification upon consent election, the Board scheduled an election for January 31, 1978, in order that the employees might choose between the Steelworkers, PSA, Marine-Industrial Transportation Union (MITU), or no union representation.

The election was held as scheduled, with Board agents and observers from the company and competing unions assigned to all polling places. Cast ballots totaled 17,245. Of these, 257 were challenged and segregated, and 35 additional ballots were declared void. The Board's count of the resulting 16,953 valid and unchallenged votes produced the following tally: 9,093 for the Steelworkers; 7,548 for the PSA; 95 for the MITU; and 217 votes against union representation. Thus, the Steelworkers received 53.6% of the valid, unchallenged votes.

The company and PSA filed timely objections contending that the election should be set aside because of misconduct prior to the election and irregularities in the way it was conducted. The objections included allegations that (1) the Steelworkers made inflammatory appeals to racial prejudice; (2) the Steelworkers made material representations of fact to the voters; (3) agents of the Steelworkers threatened and coerced employees prior to the election; (4) election observers brought lists of voters into the polling areas; (5) politicking occurred at polling areas; (6) Board agents displayed partiality in their conduct toward election observers; (7) Board agents failed to permit adequate identification of voters; (8) Board agents inadequately protected custody of blank ballots and ballot boxes; (9) Board agents departed from preelection agreements and standard procedures in conducting the election; (10) the tally of ballots was inaccurate; and (11) the cumulative effect of this conduct impugned the fairness and validity of the election.

During the Regional Director's investigation of the objections, an employee stated that he saw a stack of blank ballots in a voting booth at polling place 6.[2] There was also evidence that blank ballots were found in trash receptacles outside the polls after the election.

After completing the administrative investigation, the Regional Director recommended that the Board overrule all objections and certify the Steelworkers as the employees' bargaining representative. The

---

1. 29 U.S.C. §§ 158(a)(1), (5).

2. This information was submitted by PSA in the certification proceeding to support objections which were overruled by the Board. PSA did not, however, seek timely intervention in the unfair labor practice proceeding before the Board, and the Board argues that we are precluded from considering this evidence. We conclude, however, that the company's objection charging laxity in the failure to safeguard blank ballots against unauthorized distribution is sufficient to embrace this alleged incident of laxity. Moreover, the entire record of the certification proceeding becomes a part of the record of the unfair labor practice proceeding. *A. F. of L. v. NLRB,* 308 U.S. 401, 406, 60 S.Ct. 300, 84 L.Ed. 347 (1940).

company and PSA excepted to the Regional Director's report.

On October 27, 1978, the Board issued a decision in which it adopted, with certain modifications, the Regional Director's findings, conclusions, and recommendations. The Board criticized certain statements in the Regional Director's report which appeared to resolve conflicting testimony. It stressed that in the procedural posture of the case, the evidence presented by the objecting parties was to be accepted as true. Its criticism included the Regional Director's analysis of the objection concerning the stack of ballots in the voting booth. The Board, however, found that there were no substantial and material issues of fact raised by the objections and supporting evidence, and accordingly it denied a hearing. The Board then held that a majority of the valid ballots had been cast for the Steelworkers and certified it as the exclusive representative of all the employees in the unit. *Newport News Shipbuilding and Dry Dock Company,* 239 NLRB No. 14 (Oct. 27, 1978).

■ On November 1, 1978, the Steelworkers asked the company to enter into bargaining negotiations. The company refused to recognize the Steelworkers on the ground that there was substantial evidence of misconduct affecting the results of the election. The Steelworkers filed unfair labor practices charges against the company which ultimately resulted in an order of the Board granting summary judgment for the Steelworkers, finding violations of §§ 8(a)(1) and 8(a)(5), and requiring the company to cease and desist from refusing to bargain. *Newport News Shipbuilding*

*and Dry Dock Company,* 239 NLRB No. 159 (Dec. 22, 1978).[3]

## II

■ The important policy of the national labor laws to maintain industrial peace and to foster collective bargaining requires that representation petitions be processed expeditiously. This strong public interest justifies the Board's practice of conducting administrative investigations and resolving election objections ex parte when it appears that the factual issues are unlikely to establish that the election was unfair. *See Intertype Co. v. NLRB,* 401 F.2d 41, 44 (4th Cir. 1968). In the absence of " substantial and material issues crucial to a determination of whether NLRB election results are to be accepted for purposes of certification, " an objecting party has no right to a post-election hearing. *NLRB v. Bata Shoe Co.,* 377 F.2d 821, 826 (4th Cir. 1967); 3 Kheel, Labor Law § 1306[2][a] (1978). If, however, the objecting party presents sufficient evidence to raise a substantial and material factual issue, an adversary hearing is required, and the issue must be resolved by the Board, not the courts. *See NLRB v. Mercy College,* 536 F.2d 544, 549 (2d Cir. 1976).

■ It has long been recognized that the use of paper ballots presents special risks of election fraud. *See, e. g., Hackett v. President of City Council of Philadelphia,* 298 F.Supp. 1021, 1028 (E.D.Pa.1969). In particular, it creates the possibility of chain voting.[4] Chain voting is a major threat to the secrecy—and therefore to the integri-

**3.** PSA's motion to intervene in the unfair labor practices proceeding was denied by the Board as untimely because it was filed six days after the Board issued its decision. PSA then sought leave to intervene in this court. Sustaining objections filed by both the Board and the company, we denied intervention. PSA, however, was permitted to file an extensive amicus brief which we have considered.

**4.** In *Farrell-Cheek Steel Company,* 115 NLRB 926, 927 n.3 (1956), the Board defined "chain voting" as follows:

By "chain voting," a voter secretes a ballot upon his person without having placed it in the ballot box and takes it from the voting room to a place where it is marked by someone, who, in turn, gives the ballot to the second person in the chain who then goes into the polling room, picks up a blank ballot, goes to the polling booth, deposits the ballot marked outside the polling room and secretes the blank ballot on his person and by this means takes the blank ballot from the voting room. This is repeated again and again until all of those voters who take part in the "chain voting" have voted.

ty—of a democratic election. Laxity in handling extra supplies of blank ballots, or in allowing voters to leave the polls without depositing their ballots in the ballot boxes, multiplies the risk.

■ The presence of blank ballots outside the polling place establishes that there was an opportunity for chain voting, but it alone does not necessarily suffice to set aside an election. *Farrell-Cheek Steel Co.,* 115 NLRB 926, 927–28 (1956); *see also Pride Made Products, Inc.,* 233 NLRB No. 34 (1977); *Swift & Company,* 88 NLRB 1021, 1023–24 (1950). However, when this irregularity is combined with objections suggesting that a substantial number of blank ballots were left in voting booths, and that the Board could not account for all ballots, we think a hearing is essential.

The company's petition to set aside the election and the Board's cross-application for enforcement of its order are denied. We remand the case to the Board for the limited purpose of conducting a hearing to consider whether there is a reasonable likelihood that the election was corrupted by chain voting. If this is shown, the Board should set aside the election.

The Board need not conduct an evidentiary hearing on any of the other objections to the election. For reasons adequately explained by the Board, including its incorporation by reference of part of the Regional Director's report, the other objections do not raise substantial and material issues requiring a hearing. *Newport News Shipbuilding and Dry Dock Company of America,* 239 NLRB No. 14 (Oct. 27, 1978).

The clerk is directed to issue the mandate forthwith.