Kathleen **HACKETT** et al.

v.

**The PRESIDENT OF CITY COUNCIL
OF the CITY OF PHILADELPHIA.**

Civ. A. No. 69–795.

United States District Court
E. D. Pennsylvania.
April 19, 1969.

Paul Bender, Philadelphia, Pa., for plaintiff.

Edward G. Bauer, Jr., City Sol., Levy Anderson, First Deputy City Sol., Philadelphia, Pa., for defendant.

MASTERSON, District Judge.

On April 10, 1969 the plaintiffs, all residents and electors of the City of Philadelphia, instituted this action against the President of City Council of the City of Philadelphia, the Honorable Paul D'Ortona. The plaintiffs allege that the defendant's failure to issue writs of special election for purposes of filling vacant City Council seats existing in the First and Seventh Councilmanic Districts of Philadelphia at the primary election to be held on May 20, 1969, deprives the plaintiffs, and the class of Philadelphia citizens and electors whom they claim to represent, of their constitutionally-protected rights to vote. The challenged actions of the defendant allegedly constitute violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution, violations of the Ninth and Tenth Amendments of the Constitution, and violations of specified federal, state and municipal laws. The plaintiffs ask this Court to enter a preliminary and permanent injunction requiring the defendants to issue writs for a special election on May 20, 1969 (the scheduled date for the next primary election) for purposes of filling these vacancies, to enter a declaratory judgment that defendant's refusal to issue such writs has deprived the plaintiffs of their constitutional rights, to grant the plaintiffs the costs of prosecuting this action and to grant

any further necessary and/or proper relief.

The defendant has filed a motion to dismiss on the grounds, inter alia, that plaintiffs' complaint fails to state a claim upon which relief may be granted, and that the Court lacks equitable jurisdiction over the matters about which plaintiffs complain, that the complaint fails to raise a substantial federal question or a federal constitutional question, that the plaintiffs are guilty of laches, that the setting of the date for the special election is within the defendant's discretion and not subject to judicial control, and that the addition of a special election to the already complex primary ballot would increase confusion among the voters.

Although the plaintiffs filed their complaint in the District Court Clerk's Office on April 10, 1969, they requested the scheduling of an evidentiary hearing for Monday, April 14, 1969. A hearing was conducted at that time in order to permit both parties the opportunity to present evidence supportive of their respective positions. Testimony adduced at the hearing indicated that it would be necessary for the Court to personally visit the Warehouse at which the voting machines to be used at the May 20th election are stored and to inspect these machines in order to arrive at a realistic appraisal and meaningful disposition of significant factual defenses advanced by the defendant. Such a visit was conducted on Tuesday, April 15, 1969, by the Court, accompanied by counsel for both parties, by employees of the City who worked at the Warehouse, and by a witness, Robert S. Cooper, who is Assistant Executive Secretary of the Committee of Seventy, a non-partisan civic agency, one of the primary functions of which is to observe and help regulate the conduct of Philadelphia elections. On Thursday, April 17, 1969, further evidence was presented by the defendant, and at the same time the Court entertained legal argument by both parties. To the extent that time has permitted, the Court has reviewed the law cited and relied upon by both parties, and considered the complex factual issues involved. It is the Court's conclusion that the plaintiffs' petition is grounded upon serious constitutional considerations and that, accordingly, the defendant's motion to dismiss, which essentially challenges the constitutional nature of the plaintiffs' complaints, must be denied. It is the Court's conclusion also, however, that the overwhelming weight of relevant factual evidence indicates that to grant the plaintiffs' prayer for relief insofar as the plaintiffs request a writ of mandamus ordering the President of City Council to conduct a special election on May 20, 1969, would be to order the impossible. Evidence presented by the defendant, which is discussed more thoroughly below, demonstrates that it simply would not be feasible at this time to implement any of the three electoral procedures suggested by the plaintiffs. The evidence suggests, at the least, that alteration of the printing and mechanical plans already made by Philadelphia's Board of Elections would seriously threaten the City's chances of conducting any election at all on May 20, 1969, and that, if any such special election were ordered to be held at the primary election on May 20th, the special election would be so chaotic and confusing as to necessarily negative the opportunity of the electors to exercise an enlightened and dispassionate franchise. Hence, the plaintiffs' prayer for a preliminary injunction must be denied at this time, although, the Court will retain jurisdiction of this case.

I

The City of Philadelphia is governed by a seventeen member legislative board known as The City Council, which is composed of seven members, each of whom is denominated councilman-at-large (and one of whom, the defendant in this case, is chosen as President of the Council) and each of whose constituencies is the entire City of Philadelphia, and ten other members, councilmen, each of whom represents one of the ten coun-

cilmanic districts of the City. All councilmen are elected once every four years at municipal elections conducted in oddly-numbered years, by the votes of electors throughout the City, in the case of the councilmen-at-large, and by a vote of the electors residing in any one district, in the case of the other council members. At each election, each qualified and registered elector of the City of Philadelphia has the right to vote for one district councilman and for five councilmen-at-large.

Vacancies in the office of councilman must be filled in the following fashion:

"Should a vacancy occur in the office of any councilman, the President of the Council shall issue a writ of election to the board of elections having jurisdiction over elections in the City for a special election to fill the vacancy for the balance of the unexpired term, which election shall be held on a date specified in the writ, but not less than thirty days after its issuance. The President of Council may fix as the date of the special election, the date of the next primary, municipal or general election."

The last sentence of this provision, an understanding of which is critical to a disposition of this case, recently has been interpreted by the Supreme Court of Pennsylvania to mean that the President of City Council has the *discretion* to fix the date of a special election at any one of the three election dates noted in the provision, and the *duty* not to fix the special election for any other time. Commonwealth ex rel. Specter v. D'Ortona, 423 Pa. 22, 25, 223 A.2d 100 (1966). It is also true that the President of City Council must exercise the discretion vested in him by Section 2–101 of the Home Rule Charter in accordance with the mandatory provision of the Election Code of the Commonwealth of Pennsylvania:

"In all cases where under any law now or hereafter enacted, a special election is required to fill any vacancy in the office of member of the council or legislative body of any city, borough, town or township, such election shall be held on the day fixed in the writ for the special election or on such day as may be otherwise provided by such law, which day shall be within sixty (60) days after the issuance of the writ or after the happening of the vacancy, as the case may be * * *" Title 25 P.S. § 2778.1.

And, of course, any special election ordered by the President of City Council must comply with the procedures established in other provisions of Pennsylvania's Election Code, provisions § 1110 (h) (establishing the proper arrangement of parties on the election ballot), § 3146 (establishing the procedure for the casting of absentee ballots), and § 629 (relating to the filing of nomination certificates and nomination papers), being particularly relevant here.

The Honorable Joseph J. Hersch, then the duly elected Councilman for the 7th Councilmanic District of the City of Philadelphia, died on October 16, 1968. The Honorable Benjamin Curcuruto, then the duly elected Councilman for the 1st Councilmanic District of the City of Philadelphia, died on December 25, 1968. On February 19, 1969, the President of City Council, pursuant to the discretion vested in him by § 2–101 of the Home Rule Charter, issued a writ of election to fill these two vacancies. Shortly thereafter, it was determined that the writ was premature in that it had been issued more than sixty days before the date set for the election, in violation of the provisions of Pennsylvania's Election Code. Subsequently, the President of City Council continued to give serious consideration to the possibility and propriety of holding the special election for the councilmanic vacancies on May 20, 1969.

Ultimately, on March 28, 1969, after consultation with the leaders of the two major political parties in Philadelphia, i. e., the Republican Party and the Democratic Party, and after consultation with leading civic leaders of the community e. g., the President of the Philadel-

phia Bar Association, the President of City Council concluded that it would be both impracticable and unwise to issue the writs of election for May 20, 1969. Among other considerations which convinced the President of City Council that it would be improper to hold the election were the two following significant factors:

(1) An extraordinarily large number of candidates had filed for election to other offices involved in the May 20 election, including ninety-five candidates for the position of Common Pleas Judge. Conducting a special election, which was not a primary but rather a general election, would add significantly to voter confusion; and,

(2) The likelihood was that a significantly smaller number of people would be voting at the primary election than at the next municipal election, scheduled in November, 1969, and hence the winner of a councilmanic contest most probably would be un-representative of the vast majority of residents of the District.[1]

Although the President of City Council publicly announced his decision not to issue the writs of election on March 28, 1969, via press releases to all mass media channels in the City, the plaintiffs waited until April 10, 1969, almost two weeks after his announcement, to institute this complaint. In their complaint the plaintiffs averred that they were all citizens and electors of the City of Philadelphia, residing either in the first or seventh Councilmanic Districts of the City. The plaintiff, Mrs. Kathleen Hackett, resides in the 7th Councilmanic District, and is a candidate for the position of councilman for that district who allegedly has attempted to perform the necessary formal acts preliminary to

being designated as a candidate. For the most part the other plaintiffs are citizens who have been, and are, actively involved in a variety of civic associations and are concerned with the municipal problems affecting their respective City districts. They purport to prosecute this suit on behalf of all other citizens and electors of the 1st and 7th Councilmanic Districts of the City of Philadelphia, and there has been no contention by the defendant that they do not fairly and adequately represent these classes of persons as they must for purposes of proceeding pursuant to the class action provisions of Rule 23 of the Federal Rules of Civil Procedure.

The plaintiffs allege in their complaint that their councilmanic districts include "an outsized proportion of the low income, ill-housed, unemployed, under-employed, maleducated and generally ill-served citizens of the City of Philadelphia * * * which citizens are especially effected by the legislative acts and the omissions of the City Council." They allege that these districts are peculiarly affected by the social maladies which in general effect and disrupt life throughout this and other large urban centers in the United States. It is this factual background which the plaintiffs believe requires the action of this Court. They invoke the jurisdiction of this Court for purposes of remedying the situation under the provisions of Title 28 U.S.C. § 1343, Title 42 U.S.C. § 1983, Title 28 U.S.C. §§ 2201 and 2202, and Title 28 U.S.C. § 1331.

II

The defendant's motion to dismiss is based primarily upon the contention that the issues presented by the plaintiffs'

---

1. This view is substantiated by the voting patterns of these districts during the last councilmanic election held in 1967. At the May 16, 1967 primary election, of 87,143 registered voters in the 1st District, a total of 18,945 votes were cast, while in the general election on November 7, 1967 a total of 58,011 voters cast ballots in the councilmanic contest. In the May, 1967 primary in the 7th District, of the 85,293 voters registered, 13,651 cast ballots on behalf of the candidates for the district's council seat, while 51,476 voters cast their ballots in the General Election.

Earlier comparative voting figures for this geographic area are not available since the Ward and District boundaries were redrawn in 1967.

complaint are, although concededly significant, neither of a federal legal, nor federal constitutional, nature. He argues that the City Council of Philadelphia is a purely municipal institution, charged only with municipal concerns, and that the electoral procedures by which elections to this institution are regulated are matters with which federal courts should not interfere. Assuming arguendo that there is some federal jurisdiction over this Commonwealth's and this City's election procedures, the defendant insists that there is no basis upon which this Court properly could interfere with his decision not to issue the writs of election, in that this decision was made in accordance with the controlling interpretations of the relevant state laws enunciated by the Supreme Court of Pennsylvania in Commonwealth ex rel. Specter, supra, and was made in response to relevant and reasonable state and municipal interests. This Court is unable to agree with the defendant that there are no federal constitutional issues advanced in the plaintiffs' complaint; hence the defendant's motion to dismiss must be denied.

Since the Supreme Court's landmark decision in Baker v. Carr, 369 U.S. 186, 189, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), that a complaint alleging deprivation of the right to Equal Protection of the Law as a result of alleged improper apportionment among the electoral districts constituting the General Assembly of the State of Tennessee, was a justiciable complaint, the highest tribunal of this nation, and many other lower federal courts have acted upon complaints that the manner of constitution of a state, or of a local, legislative body, was violative of the Federal Constitution. Early in the course of this legal development the Court held that the constitutional rights which its decision in *Baker* was intended to vindicate would be protected only by legislative schemes based on the "one-man, one-vote" principle. See, Reynolds v. Sims, 377 U.S. 533, 568, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The holding in *Reynolds*, which extended the "one-man, one-vote" principle to the apportionment of seats in state legislative bodies, fairly recently was extended in turn to the method of apportionment of seats in a unit of local government which was charged with general legislative responsibility. See, Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968).

It is true, as defendant has contended, that, throughout the developments of these last few years, the Supreme Court often has expressed a concern for permitting local and state governmental units the flexibility to devise creative and experimental electoral schemes, and electoral schemes which are related to the parochial interests of the locality or state, which they feel are best-suited for the purposes of structuring and guiding the operation of their respective legislative units. See, e. g. Sailors v. Board of Education, 387 U.S. 105, 109, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), and Dusch v. Davis, 387 U.S. 112, 117, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967). It is true also that, at least on their face, the problems complained of here are significantly different than those involved in the typical malapportionment case, i. e. plaintiffs have at no time contended that there is a prevailing unconstitutional malapportionment among the ten councilmanic districts of the City of Philadelphia.

However, while acknowledging the substantial interests served by having the federal courts refrain from interjecting themselves into disputes revolving around local and/or state politics, the Supreme Court consistently and clearly has maintained that federal courts must examine and resolve substantial complaints that local and/or state election procedures have violated Federal Constitutional rights:

" * * * when the State delegates lawmaking power to local government and provides for the election of local officials from districts specified by statute, ordinance, or local charter, it must insure that those qualified to vote have the right to an equally ef-

fective voice in the election process.", *Avery*, supra, 390 U.S. at 480, 88 S.Ct. at 1118.

The argument that actions by local officers, such as the President of City Council, do not constitute "state action" as contemplated by the Fourteenth Amendment, has been rejected by the Supreme Court in decisions antedating *Baker*, see, e. g. Cooper v. Aaron, 358 U.S. 1, 17, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). The Supreme Court also has emphasized that when decisions of municipal officers are increasingly important, and their responsibilities increasingly complex, the Federal Courts have a responsibility to protect rights guaranteed by the Constitution as they are affected by the operations of local government:

> "In a word, institutions of local government have been a major aspect of our system, and their responsible and responsive operation is today of increasing importance to the quality of life of more and more of our citizens." *Avery*, supra, 390 U.S. at 481, 88 S.Ct. at 1118.

In view of the compelling similarities between the plaintiffs' claim here and the claims challenging malapportionment schemes which the Supreme Court has often held justiciable, the motion to dismiss asserting that these claims do not raise substantial federal questions must be denied. To say that the plaintiffs' claim should not be dismissed is not, however, to say that the claim of federal right here is so clear as to warrant the granting of a preliminary mandatory injunction which would have the effect of finally determining the case in plaintiffs' favor. No Federal Court as yet has held that the failure of a local election official to call a special election to fill a vacancy at the very next election, whether primary or general, constitutes a denial of any federal right. The apportionment cases have been primarily concerned with arbitrary or capricious decisions of local election officials which generally result in relatively permanent favoring of one group of voters over another group of voters. As stated by the Court in *Avery*, supra, 390 U.S. at 484, 88 S.Ct. at 1120:

> "The Equal Protection Clause does not, of course, require that the state never distinguish between citizens, but only that the distinction being made not be arbitrary or invidious."

On the basis of the record at the preliminary injunction hearing it cannot be concluded that a decision to postpone the special election until the municipal election in November, which was reached after consultation with representatives of both of the major political parties, was "arbitrary", or "capricious". Nor can it be said that the decision to have the special election at the municipal election, thus avoiding the confusions of the primary, as discussed below, and assuring that the majority of the voters will in fact have an opportunity to vote for the candidates for council, is "invidious". In short, there is no evidence in this case of any settled purpose to discriminate against the voters in these districts such as prompted the Supreme Court to vindicate constitutional claims in Baker v. Carr, supra, and Avery v. Midland County, supra.

Not only is the claim of constitutional right here not so clear as to move the Court to take affirmative action by way of mandatory preliminary injunction to vindicate it, but, the factual record in this case makes clear that it is virtually physically impossible to grant the plaintiffs the relief they claim at the primary election which is scheduled for May 20, 1969.

### III

Three methods for holding special elections in these districts have been proposed. Two of these would require reshuffling previously planned ballot positions on voting machines. This entails resetting the mechanical apparatus of approximately 1200 voting machines already prepared for the election. The resetting process would require about 1200 man hours *in addition to* the hours necessary between now and election day

for the routine tasks of preparing, testing and delivering the machines to the polls. It is probable that all of the preparations which such a decision would necessitate could not be carried out in time to hold the election as scheduled.

Most critical, however, with regard to the feasibility of ordering the use of the voting machines to hold the special election on May 20th, is the testimony by representatives of the Dunlap Printing Company, which has contracted to print the election supplies, that it is not physically possible to complete the printing of all the items necessary for the election in time to have the voting machines ready for the scheduled election. Each of 1,742 divisions in the City of Philadelphia requires a unique set of printed materials. The testimony indicated that 1200 hours of press time were necessary to print these materials. This will be accomplished on four presses each sharing the work load equally. Three men are necessary to man each machine and must work seven days a week for twenty-five straight days in shifts of twelve hours per day. As the printing of election materials is an unusual and highly specialized task, neither additional printing facilities, nor the experienced personnel necessary to do the work are available elsewhere. After the materials are printed they must be proofread by representatives of the County Commissioners, and when approved the ballot labels have to be inserted into each voting machine. This will require about one-half an hour for each machine and another half hour is necessary to check each machine to determine whether the machine's setting corresponds with the ballot that has been inserted.

All of the preparations must be completed by May 13th in order to allow one week for delivery of 3,484 voting machines to the respective polling places.

The Court therefore concludes that if it this day ordered that the voting machines be rearranged in *any* fashion to hold the special elections in the First and Seventh Councilmanic Districts its order could not physically be carried out

in time for the scheduled primary election on May 20th. Without regard to the difficulties involved in mechanically resetting the machines to receive the new ballots, the printing problems alone render compliance with such an order a physical impossibility.

Alternatively, it is urged that this Court require the use of paper ballots as a means of preventing further delay in filling these Councilmanic vacancies. There is a strong possibility that this course will effect a disenfranchisement of certain voters qualified to cast ballots under state law. The Election Code of Pennsylvania provides that absentee ballots may be cast by voters under certain circumstances. See 25 P.S. § 3146.1 et seq. Under 25 P.S. § 3146.1(a) applications for absentee ballots may be received in the office of the County Board of Elections no earlier than fifty days before the Primary or General Election, and not later than a week before the election. Under § 3146.5 county boards of election upon receipt of an application for an absentee ballot must:

> " * * * as soon as possible after the respective district ballots are printed and in no event later than the second Tuesday prior to the day of the primary or election commence to deliver or mail official absentee ballots to all such electors whose applications have been approved; as additional applications of such electors are received, the board shall deliver or mail official absentee ballots to such additional electors within forty-eight hours after [ascertaining] approval of their application."

At the forthcoming primary election the deadline for beginning the process of mailing absentee ballots to voters would be May 6th, 1969.

If a writ for a special election is issued, nominations for candidates may be made by political bodies. Under § 629 of the Election Code, as amended by 25 P.S. § 2779 (pocket part) political bodies and parties have fifteen days after the issuance of the writ of election to file nomination certificates and nomination

papers. While the major political parties will probably be able to file nomination papers promptly, no further action could be taken to print paper ballots until the expiration of the fifteen-day period. It is to be noted that Kathleen Hackett, the initial plaintiff, alleges in paragraph 13 of the Complaint that she intends to preempt the name of the "Community Party" for district councilmen in the Seventh District. Therefore, it is indeed likely that the nomination procedures for persons filing as political bodies would be invoked prior to the forthcoming election.

If the writ of election were issued today, the fifteen day period for political bodies to achieve nominations would not expire until May 5th. Objections to the certificates or papers filed by such groups may be raised for three (3) additional days. 25 P.S. § 2782. This would mean that absentee ballots could not be printed until May 8th. Thereafter, a period of an additional nineteen (19) days is provided for hearing and ruling on objections.

On the other hand, the last day to initiate mailing of absentee ballots is May 6th so that it might not be known with certainty who are the candidates of the various political parties and bodies until after the day on which the mailing of absentee ballots must commence. This could result in the disenfranchisement of some persons entitled to vote by absentee ballots.

Since the 1948 Primary Election when paper ballots were, according to the record, last used in Philadelphia, a new generation of voters has achieved the franchise. For the most part these are persons who have had little if, indeed any, exposure to the difficulties inherent in voting by paper ballots. By the same token the Board of Elections will be confronted with the necessity of having to train local election officials in half-forgotten procedures for handling and counting paper ballots. Some of the general reasons why paper ballots are to be avoided were elicted during the hearing; the danger of spoilage, the lack of adequate safeguards and the difficulty of policing a paper ballot election, as well as chain voting.

While the testimony indicated that it was possible to print and distribute paper ballots in time to hold special elections on May 20th, such a resolution would only exacerbate the voter confusion inherent in the present lengthy ballots. We are very reluctant to require on a motion for a preliminary injunction that voters going to the polls primarily in order to select among candidates for their own party's nominations, should be presented with the need to choose among actual nominees for office on the same occasion. One can only speculate as to the effect which segregation of voters according to their party affiliation may have on a reasoned choice.

Indeed an inquiry may be raised as to whether the curtained-off area of a voting booth having a party designation would sufficiently provide the anonymity in marking paper ballots which is sought by the Pennsylvania Election Code in 25 P.S. § 2730.

Hence, it is also concluded that the attempt to have the special election during the May 20th Primary is not feasible.

Plaintiffs have suggested that the time problem could be cured by entering an order postponing the entire primary election until some later time when it would be possible to either include the special election on the machines or to have separate paper ballots under conditions which would make it possible to have all qualified voters vote. An order postponing the entire primary election would not only cause great inconvenience and confusion to all of the present candidates and to the electorate throughout the city but might also result in serious legal questions being raised as to the validity under state law of any of the results of such later election. Such massive intrusion of Federal authority into a local election is not warranted when the

claimed violation of Federal right is as unclear as it is in the present case.

## IV

Although the Court has decided to deny the plaintiffs' request for a preliminary mandatory injunction in view of the present state of the record in this case, today's decision does not end this case. The longer the plaintiffs are without a district councilman the more serious their claim of deprivation of a fundamental right becomes. A literal reading of *Specter*, supra, would permit the President of City Council not merely to postpone the special election from May 20th to the municipal election in November, but would permit him further to postpone the special election until the general election scheduled for November, 1970. This would have the effect of leaving the 1st and 7th Districts without a district councilman for upwards of two years and would result in a situation closely similar to those the Supreme Court has found violative of the Federal Constitution in Baker v. Carr, supra, and Avery v. Midland County, supra.

Although the President of City Council has stated his intention to call the special election at the municipal election in November, 1969, the plaintiffs have expressed their concern that a failure to do so might again create the situation where it would be almost physically impossible for the Court to vindicate their rights through injunctive relief. In order to avoid this problem the Court will retain jurisdiction of this case and will entertain an appropriate Order requiring the election officials to make preparations to include the special election on the ballots at the municipal election in November, so that there can be no argument of physical impossibility in the event that the election is not called for at that time, and so that this Court could grant effective relief if it should conclude at that time that such failure to call the election constituted a violation of the plaintiffs' rights under the Equal Protection Clause of the Federal Constitution.

## ORDER

AND NOW, this 19th day of April, 1969, it is ORDERED AND DECREED that:

(1) The defendant's motion to dismiss the Complaint is denied;

(2) This action shall be maintained as a class action under Federal Rule of Civil Procedure 23(b) (h). The class constitutes all electors and citizens resident in the First and Seventh Councilmanic Districts of the City of Philadelphia;

3. Plaintiffs' motion for a preliminary mandatory injunction is denied; and

4. The Court shall retain jurisdiction of the action and will entertain motions for further appropriate preliminary relief in accordance with the accompanying Opinion.