James C. GREENWOOD, David W. Heckler, Thomas Druce, Roy Reinard, III, Paul I. Clymer, David J. Steil, Plaintiffs,

v.

Mark SINGEL, Lt. Governor of the Commonwealth of Pennsylvania and Brenda K. Mitchell, Secretary of the Commonwealth of Pennsylvania, Defendants,

and

H. William DeWeese, Speaker of the House of Representatives of the Commonwealth of Pennsylvania, Intervenor.

Civ. A. No. 93–0626.

United States District Court, E.D. Pennsylvania.

March 12, 1993.

## MEMORANDUM

DuBOIS, District Judge.

Plaintiffs, James C. Greenwood, David W. Heckler, Roy Reinard, III, Paul I. Clymer and David J. Steil, all residents and registered voters in the 10th Senatorial District of Bucks County, Pennsylvania, and plaintiff Thomas Druce, a resident of Bucks County, (collectively "plaintiffs") instituted this action against Mark Singel, the Lieutenant Governor of the Commonwealth of Pennsylvania and President of the Senate of the Commonwealth of Pennsylvania, and Brenda K. Mitchell, Secretary of the Commonwealth of Pennsylvania. H. William DeWeese, Speaker of the House of Representatives of the Commonwealth of Pennsylvania, was granted leave to intervene pursuant to Federal Rule of Civil Procedure 24(b)(2).

■ Plaintiffs seek a declaration that section 2778 of Title 25 of the Pennsylvania Statutes, 25 Pa.Stat.Ann. § 2778,[1] which sets forth the procedure for filling a vacancy in either house of the Pennsylvania General Assembly, is unconstitutional. Plaintiffs contend that section 2778 violates the due process and equal protection clauses of the Fourteenth Amendment because it grants discretion to the presiding officer of each house of the General Assembly to issue a writ for a special election to fill a vacancy in his respective house without requiring that the election be scheduled within a specified period of time. Plaintiffs further seek a preliminary injunction to enjoin a special election to fill the vacancy in the 10th Senatorial District[2] in Pennsylvania scheduled for July 13, 1993, and to require that the special election be scheduled for May 18, 1993, which is the date already fixed for a municipal primary election. Plaintiffs contend that the failure of the Commonwealth to hold the election on May 18, 1993 will result in a deprivation of their fundamental right to vote and be represented in violation of the First and Fourteenth Amendments.[3] In essence, plaintiffs claim their constitutional rights are violated because defendants impermissibly delayed scheduling the special election beyond May 18, 1993.

1. Section 2778 provides

Whenever a vacancy shall occur in either House of the General Assembly whether or not it then be in session, the presiding officer of such House shall issue a Writ of Election to the proper County Board or Boards of Election and the Secretary of the Commonwealth, for a special election to fill said vacancy, which election shall be not less than sixty (60) days after the issuance of said Writ. The presiding officer may fix, in such Writ of Election, the date of the next ensuing primary, municipal or general election as the date for holding any such special election; provided, however, that should the Governor after the issuance of the said Writ of Election advise the presiding officer that the General Assembly will be called into extraordinary session prior to the date set for such special election, the presiding officer may countermand the Writ theretofore issued and shall issue a new Writ of Election, fixing therein such earlier date therefore as is deemed expedient, but which shall no be less than sixty (60) days after the issuance of said Writ.

2. The vacancy occurred on January 5, 1993, when James C. Greenwood resigned from the Senate of the Commonwealth of Pennsylvania upon taking the oath of office as a Representative in the United States Congress for the 8th Congressional District of Pennsylvania.

3. Plaintiffs also charge in the Amended Complaint that section 2778 of the Election Code violates the Seventeenth Amendment to the United States Constitution. As the Seventeenth Amendment itself makes clear, it applies only to the election of United States Senators, not state legislators. The Court need not, therefore, address the constitutionality of section 2778 under the Seventeenth Amendment.

Defendant Mark Singel has filed a Motion to Dismiss and supporting papers, contending that section 2778 is constitutional because the Commonwealth has wide discretion under the Constitution to fix election dates and that legitimate and rational reasons exist for scheduling the election on July 13, 1993. Intervenor H. William DeWeese has filed a Motion to Dismiss and supporting papers, contending that section 2778 is constitutional and that there has been no abuse of discretion on the part of the Lieutenant Governor in scheduling the special election on July 13, 1993. Defendant Brenda K. Mitchell has also filed a Motion to Dismiss or in the alternative for Summary Judgment, advancing the same arguments as defendant Singel and intervenor DeWeese and adopting the positions set forth in their submissions. Plaintiffs submitted a Memorandum in Opposition to defendant Singel's Motion to Dismiss. Defendant Singel submitted a Reply Memorandum.

An evidentiary hearing was held on March 4, 1993, on plaintiffs' Petition for Injunction and Other Relief. At the conclusion of the hearing, the Court heard argument on the pending Motions to Dismiss.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and §§ 1343(3) and (4).

For the reasons that follow, the Court will grant the Motions to Dismiss of defendants Singel and Mitchell and intervenor DeWeese and deny plaintiffs' Petition for Injunction and Other Relief. The Court does so, and does not consider the evidence presented at the hearing, because the Court concludes (1) plaintiffs have failed to state a claim upon which relief can be granted, and (2) with the single exception of adjudicative facts related to the demographics of the Pennsylvania Senate and the 10th Senatorial District, which are not in dispute and are favorable to plaintiffs, and of which the Court takes judicial notice pursuant to Federal Rule of Evidence 201, the evidence presented at the hearing did not establish any facts not pled in the Amended Complaint which are relevant to the issues before the Court.

## I.

■ In deciding a motion to dismiss for failure to state a claim, the court must accept as true all factual allegations contained in the complaint and draw from them all reasonable inferences. *D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). A complaint should be dismissed for failure to state a claim only if it is clear that no relief can be granted under any set of facts which could be proved. *Id.; see Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

## II.

■ The Supreme Court "has often noted that the Constitution 'does not confer the right of suffrage upon any one,' and that 'the right to vote, *per se,* is not a constitutionally protected right'." *Rodriguez v. Popular Democratic Party,* 457 U.S. 1, 9, 102 S.Ct. 2194, 2200, 72 L.Ed.2d 628 (1982) (citations omitted). However, where a state provides that its representatives are to be elected "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Id.,* 457 U.S. at 10, 102 S.Ct. at 2200 (citing *Dunn v. Blumstein,* 405 U.S. 330, 336, 92 S.Ct. 995, 1000, 31 L.Ed.2d 274 (1972)).

■ The right to vote is protected against state encroachment by the due process and equal protection clauses of the Fourteenth Amendment. If the state denies the right altogether or abridges it in a manner which renders the electoral process fundamentally unfair, there may be a violation of due process. If, on the other hand, the state discriminates in favor of some voters or political parties and against others, there may be a violation of equal protection. *See Duncan v. Poythress,* 515 F.Supp. 327 (N.D.Ga.1981). Plaintiffs have chosen to proceed on both grounds—due process and equal protection. Although the Court concludes that plaintiffs' claims may more appropriately be predicated on a violation of equal protection, it will discuss both equal protection and due process.

■ In assessing the constitutionality of a state statute under the due process and equal protection clauses, a court must preliminarily determine the standard of review to apply. If a state statute restricts access to the electoral process, or discriminates among different groups of voters, or has a special impact on a discrete group of voters or political parties, a court applies strict scrutiny review under which the statute could be upheld only if the state shows that it advances a compelling state interest and is narrowly tailored to serve that interest. If, on the other hand, the statute does not restrict access to the electoral process or afford unequal treatment to different classes of voters or political parties, a court applies rational basis review under which the statute could be upheld if the state shows that it is rationally related to a legitimate state interest. *See Rodriguez,* 457 U.S. at 10, 102 S.Ct. at 2200; *Trinsey v. Pennsylvania,* 941 F.2d 224, 227, 234 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 658, 116 L.Ed.2d 750 (1991); *Lynch v. Illinois State Bd. of Elections,* 682 F.2d 93, 97 (7th Cir.1982).

### III.

■ No provision of the Constitution expressly mandates the procedures a state must follow in filling vacancies in its legislature. *See Rodriguez,* 457 U.S. at 5, 102 S.Ct. at 2197. "Each State has the power to prescribe the qualifications of its officers and the manner in which they shall be chosen." *Gregory v. Ashcroft,* —— U.S. ——, ——, 111 S.Ct. 2395, 2401, 115 L.Ed.2d 410 (1991) (citing *Boyd v. Thayer,* 143 U.S. 135, 161, 12 S.Ct. 375, 382, 36 L.Ed. 103 (1892)). Indeed, there is no requirement that a vacancy be filled by an election. *See Rodriguez,* 457 U.S. at 5, 102 S.Ct. at 2197. Instead, states have ·wide latitude concerning the method and timing of filling legislative vacancies, and courts have routinely upheld various schemes. *See Id.* (upholding Puerto Rico statute that vests a political party with the power to fill an interim vacancy in the Puerto Rico Legislature); *Lynch,* 682 F.2d at 95 (upholding Illinois election law that provides for the Mayor to fill an aldermanic vacancy by appointment); *Trinsey,* 941 F.2d at 234 (upholding Pennsylvania statute which did not require the Commonwealth to hold a primary election before a general election to fill a vacancy in the United States Senate); *Valenti v. Rockefeller,* 292 F.Supp. 851, 866 (S.D.N.Y.1968), *aff'd* 393 U.S. 405, 89 S.Ct. 689, 21 L.Ed.2d 635 (1969) (a three-judge federal court, rejecting the argument that the Seventeenth Amendment required a state to fill an interim vacancy in the United States Senate by election as soon as possible, stated the Constitution confers "a reasonable discretion upon the states concerning the timing and manner of conducting vacancy elections").

Provided that the state statute at issue does not restrict access to the electoral process or discriminate among classes of voters or political parties, courts apply a "deferential standard of review over a state's choice of the manner in which to fill legislative vacancies." *Trinsey,* 941 F.2d at 234; *see also Lynch,* 682 F.2d at 96 ("method chosen by the state legislature for filling vacancies is entitled to substantial deference"). Under this standard of review, a state's choice as to how to fill legislative vacancies, and when to schedule an election, is constitutional "so long as legitimate interests rationally support the scheme." *Id.* at 97; *Mason v. Casey,* 1991 WL 185243 (E.D.Pa.1991) (applying rational basis review in upholding the Commonwealth's right to set the date for an election to fill a vacancy for the United States House of Representatives under section 2777 of Pennsylvania's Election Law, 25 Pa.Stat.Ann. § 2777). "Courts must ask whether the state rationally could have believed that the distinction drawn would promote a legitimate government objective." *Philadelphia Police & Fire Ass'n v. Philadelphia,* 874 F.2d 156, 163 (3d Cir.1989). Plaintiffs bear the burden of proof on this issue. *Id.*

### IV.

Plaintiffs argue the Court should apply strict scrutiny review in assessing the constitutionality of section 2778 because, they contend, this is a case about the right to vote, a fundamental right, which triggers heightened review. In support of their position, plaintiffs rely on *Harper v. Virginia State Board*

*of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) and *Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), where state voting statutes were struck down under strict scrutiny review. Defendants Singel and Mitchell and intervenor DeWeese, on the other hand, contend that because section 2778 applies to all special legislative elections, providing all Pennsylvanians the same ability to vote for members of the legislature, there is no fundamental right at issue in this case. Thus, they argue the Court should apply rational basis review in scrutinizing the constitutionality of section 2778.

■ The cases on which plaintiffs rely do not support the contention that strict scrutiny is applicable in this case. In *Harper,* which involved a poll tax on Virginia voters, the Supreme Court held that the state "violates the Equal Protection Clause of the Fourteenth Amendment when it makes the affluence of the voter or payment of any fee an electoral standard." 383 U.S. at 666, 86 S.Ct. at 1081. Contrary to plaintiffs' assertion, the Supreme Court did not hold that the right to vote, *per se,* is fundamental, always triggering strict scrutiny review.[4] Rather, the Supreme Court applied strict scrutiny review in that case because it determined that the Virginia statute discriminated among classes of voters on the basis of wealth. Similarly, in *Kramer,* which involved a New York statute limiting the right to vote in certain school districts to owners or lessees of taxable realty, the Supreme Court applied strict scrutiny review because the statute restricted access to the electoral process to a discrete group of voters. Neither *Harper* nor *Kramer* can fairly be read to support the proposition that this Court should apply strict scrutiny review merely because section 2778 of the Pennsylvania

Election Code concerns the electoral process. Instead, *Harper* and *Kramer* stand for the non-controversial proposition that where a statute restricts access to the electoral process, or discriminates among classes of voters, or has a discrete impact on particular voters or political parties, strict scrutiny review is triggered.

■ In the instant case, section 2778 of the Pennsylvania Election Code neither restricts access to the electoral process, nor discriminates against a particular group of voters, nor has a special impact on a discrete group of voters or political parties. To the contrary, all qualified voters in the Commonwealth of Pennsylvania have an equal opportunity to select representatives and senators to the General Assembly in the general election, and the special election provision applies uniformly to all vacancies in the General Assembly, whenever they arise. The Court, therefore, will apply rational basis review in scrutinizing the constitutionality of section 2778.

## V.

■ The first issue presented in this case is whether section 2778 of Pennsylvania's Election Code, which provides for a special election to fill a legislative vacancy, but at the same time affords the Lieutenant Governor discretion in fixing the date of the election, is unconstitutional. Although plaintiffs concede that the Commonwealth is given "some" discretion as to the method by which vacancies of elected representatives are filled, *see* Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 7, they contend that the statute is unconstitutional because it does not require prompt filling of vacancies, without unnecessary expense and inconvenience. Defendants Singel and Mitchell and

---

4. Plaintiffs cite the following passage from *Harper* which they contend stands for the proposition that the right to vote is a fundamental right:

Long ago in *Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 (1886), the Court referred to the "political franchise of voting" as a "fundamental political right, because preservative of all rights." 383 U.S. at 667, 86 S.Ct. at 1079.

Read in context, however, this language does not support the broad proposition that the right to vote, *per se,* is fundamental. In *Yick Wo,* the Supreme Court struck down a municipal ordinance under which the plaintiff was imprisoned, because the ordinance discriminated against a particular class of people. In analyzing the constitutionality of the municipal ordinance, the Supreme Court discussed the right to vote, noting that while a state may regulate the electoral process, it may do so only in a reasonable and uniform manner.

intervenor DeWeese, on the other hand, contend that section 2778 is constitutional because the Commonwealth has wide discretion under the Constitution to schedule elections and can vest discretion in choosing special election dates in the presiding officer of each house of the General Assembly.

Under the Supreme Court's decision in *Rodriguez,* 457 U.S. 1, 102 S.Ct. 2194, 72 L.Ed.2d 628, the scheme provided by section 2778 to fill legislative vacancies is constitutional. In *Rodriguez,* the Supreme Court upheld a statute that vests a political party with the power to fill legislative vacancies by appointment where the appointee would hold office for approximately 40 months. The Supreme Court concluded that the statutory scheme was constitutional because the appointment method was rationally related to a legitimate state interest of ensuring that vacancies are filled promptly and without the expense and inconvenience of a special election. *See also Lynch,* 682 F.2d 93 (sustaining mayor's statutory authority to fill aldermanic vacancies by appointment where the appointee would serve 28 months and the statute did not require mayor to make appointment within a certain period of time).

Applying *Rodriguez,* because it is constitutionally permissible not to hold an election to fill legislative vacancies, it is constitutionally permissible to have a legislative scheme which provides for elections at the same time that it affords some flexibility in setting the date and vests the presiding officer of both houses of the General Assembly with the discretion to fix the date. Without enumerating all of the plausible reasons in support of this statutory scheme, the Court concludes that section 2778 of the Election Code is constitutional because this legislative scheme is rationally related to the legitimate state interest of ensuring that there be some flexibility in setting the date of a special election to fill a vacancy in the General Assembly and granting the presiding officer of both houses of the General Assembly such discretion.

## VI.

The second issue presented in this case is whether the delay in scheduling the special election is unconstitutional. Plaintiffs

contend that the Lieutenant Governor abused his discretion in scheduling the special election for July 13, 1993, rather than May 18, 1993, the date already fixed for a municipal primary election. Expanding this argument, they take the position that the Lieutenant Governor was motivated by impermissible partisan political considerations, that scheduling the election for July 13, 1993 is tantamount to not holding an election at all, and that there is no rational basis for holding the election on any date other than May 18, 1993. Defendants Singel and Mitchell and intervenor DeWeese, on the other hand, argue that plaintiffs can not demonstrate that there are no legitimate reasons for having the election on July 13, 1993, and that rational bases exist for scheduling the special election on July 13, 1993, or, for that matter, on any date other than May 18, 1993.

In support of their argument that the Lieutenant Governor scheduled the election on July 13, 1993 for impermissible partisan reasons, plaintiffs refer to the Lieutenant Governor's stated reasons for holding the election on that date, specifically the following two statements concerning the adoption of the state budget:

1. For twelve long years, the majority in the Senate have been difficult to deal with on this issue. This year we are going to do it right.

2. Republicans have been in control for twelve years, I think it is only fair and reasonable that Governor Casey's programs for 1993 and the Senate Democrats get one budget season to get their legislative programs through. I had initially hoped we could accomplish that by May 18th, but I found there are too few days in the legislative season to do that.

*See* Amended Complaint at ¶¶ 28, 29. Plaintiffs rely on *Duncan v. Poythress,* 515 F.Supp. 327 (N.D.Ga.1981), *aff'd* 657 F.2d 691 (1981), *cert. dismissed,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982); *Jackson v. Ogilvie,* 426 F.2d 1333 (7th Cir.1970), *cert. denied,* 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 64 (1970), and *Hackett v. President of City Council,* 298 F.Supp. 1021 (E.D.Pa.1969), *aff'd* 410 F.2d 761 (1969) to support their position that political motivations are imper-

missible considerations in determining when to schedule the election and that failure to hold the election on May 18, 1993 amounts to an unconstitutional denial of due process and equal protection under the Fourteenth Amendment.

Plaintiffs' argument that there is no rational basis for holding the election on any date other than May 18, 1993 is based on the facts, deemed admitted for purposes of the Motions to Dismiss, that the Commonwealth will save between one hundred and fifty thousand dollars ($150,000.00) and two hundred thousand dollars ($200,000.00) in expenses if the special election is held on May 18, 1993, *see* Amended Complaint at ¶ 31, and that residents of the 10th Senatorial District will not be deprived of representation in the current session of the Senate, where important legislation is pending,[5] for an additional period of time. *See* Amended Complaint at ¶ 30. The Court does not minimize the importance of these interests.

Contrary to plaintiffs' contention, the cases on which they rely—*Duncan, Ogilvie* and *Hackett*—do not support their position that partisan political motivations are impermissible considerations in determining when to schedule the election, and that failure to hold the election on May 18, 1993 amounts to an unconstitutional denial of due process and equal protection under the law. In *Duncan,* 515 F.Supp. 327, the court held that various Georgia state officials, including the governor and an appointed justice who had just been elected to a full term, decided that the latter should resign after taking office so as to avoid holding a special election, which would have been required by state statute if the judicial vacancy occurred between the time the justice was elected and the time he took office. The court, concluding that the governor attempted to disenfranchise the voters, held that the governor could not ignore the state statute requiring a special election to fill a judicial vacancy, and appoint someone to this position, by manipulating the timing of the judicial vacancy.

Similarly, in *Ogilvie,* 426 F.2d 1333, which involved a special election to fill a vacancy for the United States House of Representatives, the court held that the Illinois governor could not refuse to issue a writ of election. Significantly, the court also held that the governor had discretion in scheduling the date of the special election. *Id.* at 1338. Finally, in *Hackett,* 298 F.Supp. 1021, which involved two vacancies in the Philadelphia City Council, plaintiffs alleged that they were being deliberately denied representation and the right to vote when the President of City Council, with the agreement of the two major political parties, failed to set any date for the special election to fill the vacancies. The court held that plaintiffs had stated a constitutional violation sufficient to survive a motion to dismiss, but an insufficiently clear violation to warrant granting an injunction. The court retained jurisdiction, determining that it would entertain a motion for an injunction if the President of City Council refused to call a special election at the time of the next general election.

■ These cases, fairly read, do not stand for the proposition that partisan political considerations may never form the basis for the decision when to schedule a special election to fill legislative vacancies. While this Court recognizes that a public official's motive in enforcing a statute is relevant in determining whether there has been discriminatory application of a law, *see Holder v. Allentown,* 987 F.2d 188 (3rd Cir.1993), no court has gone so far as to hold that a state could not constitutionally rely on political concerns in scheduling special elections. Indeed, the Supreme Court in *Rodriguez,* 457 U.S. 1, 102 S.Ct. 2194, holding that political party-based concerns can constitutionally form the predicate for state law and that the choice of a replacement legislator can be made exclusively on the basis of party affiliation, strongly suggests that partisan motivation is not constitutionally impermissible. Similarly, in *Kaelin v. Warden,* 334 F.Supp. 602 (E.D.Pa.1971), the court upheld a state law prohibiting voters from voting for more than two county commissioners of the same

---

5. In their Amended Complaint, plaintiffs aver that the following bills are pending: workers compensation legislation, parental and medical

leave legislation, judicial reform legislation, and school funding and school subsidy reimbursement legislation.

political party. *See Id.* at 605. In so holding, the court explicitly stated "[n]o compelling reason has emerged to cause us to inhibit the state from attempting to achieve what it considers to be a legitimate political goal." *Id.*

Even *Duncan,* vigorously cited by plaintiffs for the proposition that political motivations are an impermissible consideration in determining when to schedule a special election, does not support this broad holding. Although the court in *Duncan* stated, in powerful language, "any conduct which favors the 'ins' against the 'outs' is impermissible," 515 F.Supp. at 338, in the cases cited in support of this statement the courts were concerned with intentional and purposeful discrimination. Thus, in *Smith v. Cherry,* 489 F.2d 1098 (7th Cir.1973), the court, holding that allegations that defendants used a sham candidate to shift to themselves the power to select their party's nominee stated a cause of action for violation of the equal protection clause of the Fourteenth Amendment, stated

> [t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection *unless there is shown to be present in it an element of intentional or purposeful discrimination.*

489 F.2d at 1103 (citing *Weisberg v. Powell,* 417 F.2d 388, 392 (7th Cir.1969)) (emphasis added).[6] *See also White v. Snear,* 313 F.Supp. 1100 (E.D.Pa.1970) (holding that county commissioners could not give patronage employees election day off to engage in political activities because employees would be used by a certain segment of the Republican party to frustrate a candidate's bid for nomination, which the court found to be *purposeful discrimination*).

In the instant case, by contrast, plaintiffs do not allege that the Lieutenant Governor intentionally and purposely sought to discriminate against voters, or a sub-class of voters, in the 10th Senatorial District.[7] Rather, they contend only that he was motivated by partisan political considerations in scheduling the election for July 13, 1993. That contention is based on the fact that the State Senate, as presently constituted, has 25 Democrats and 24 Republicans, giving the Democrats, the Lieutenant Governor's party, a majority. Because the 10th Senatorial District has, in the last three elections, elected Republicans to the State Senate,[8] for purposes of the pending Motions the Court will assume that a Republican would, in all probability, be elected to fill the vacancy created by the resignation of James Greenwood. That being so, and as reported to the press by the Lieutenant Governor, the Court finds that the decision to schedule the special election after the Senate votes on significant legislation was calculated to ensure passage of legislation sponsored by the Democrats.

The Court concludes that such partisan considerations, to maintain a working majority in the Senate that could pass legislation sponsored by Governor Casey and Senate Democrats, are rationally related to a legitimate state interest. This legitimate governmental interest is not invalidated because it involves political considerations. That is so because of the fundamental role of partisan politics in government. The two are inextricably intertwined.

The Court holds only that the reason given by the Lieutenant Governor for scheduling the special election on July 13, 1993 is constitutional. The Court expresses no other opinion as to the propriety of the Lieutenant Governor's statements.

In so holding, the Court notes that other courts have upheld statutory schemes which provide for political party and executive appointments to fill state legislative vacancies. *See, e.g., Rodriguez,* 457 U.S. 1, 102 S.Ct.

---

**6.** To the extent the ruling in *Duncan* extends beyond the cases on which it relies, this Court declines to follow it.

**7.** On that point, the Amended Complaint states only that the statute "... promotes purposeful discrimination against Plaintiffs and the other two hundred fifty thousand (250,000) citizens of the 10th Senatorial District based upon political belief and affiliations...." Amended Complaint at ¶ 40.

**8.** The Court takes judicial notice of these facts pursuant to Federal Rule of Evidence 201.

2194, 72 L.Ed.2d 628; *Lynch,* 682 F.2d 93. Such schemes, too, are inherently political, particularly if, as is likely in practice, the governor and the former state legislator are of different political parties. *See Cintron-Garcia v. Romero-Barcelo,* 671 F.2d 1, 6 (1st Cir.1982); *Trinsey,* 941 F.2d 224. They reflect, however, "knowledge of political practice, [which] seems perfectly consistent with the basic democratic role of the modern political party—translating the individual wills of myriad voters into a practically achievable program administered by a government that can be held responsible for its performance at this polls." *Cintron-Garcia,* 671 F.2d at 6. Indeed, it seems no more partisan or political in principle for the Lieutenant Governor to delay scheduling a special election for partisan political reasons than to provide for political party or executive appointment to fill an interim vacancy in the legislature.

Carried to its logical conclusion, moreover, it could be argued by those in the position of the plaintiffs that any delay in scheduling a special election beyond the 60 day period provided by statute is impermissible if the legislature is in session and bills are being discussed and votes are being held. That argument makes absolutely no sense because it would eliminate all discretion in scheduling a special election, completely defeating the legislative scheme set forth in section 2778 of the Election Code, found by the Court to be constitutional. *See supra,* 671 F.2d at 11–13.

Nor do *Duncan, Ogilvie* and *Hackett* stand for the proposition that a decision to schedule a special election on a date after significant legislation is passed is tantamount to the failure to hold an election at all. The courts in those cases were concerned with the failure to schedule a special election *at all,* thus disenfranchising voters, as in *Duncan* and *Ogilvie,* or leaving citizens of the district without representation for an indefinite period of time, as in *Hackett.* The courts in those cases were not concerned with the issue before this Court—the right to have a special election held on a specific date, and, in fact, the courts in *Ogilvie* and *Hackett* refused to recognize such a right.[9]

In addition to whatever political considerations may have motivated the Lieutenant Governor's decision to schedule the election for July 13, 1993, the Court concludes that there is at least one other, non-partisan, reason why it is rational to hold the special election on July 13, 1993, or some other date, rather than May 18, 1993. The election currently scheduled for May 18, 1993 is a municipal election. The Lieutenant Governor could rationally conclude that an election for a state senate seat would be better held on a date different from that for municipal elections, so that local and state issues and personalities would not be intermixed. There is legislative support for such a proposition because, under the Election Code, municipal and state elections are held in different years.[10]

Courts which have examined this issue, moreover, have consistently refused to interfere with the discretion of a government official in scheduling a special election. *See, e.g., Mason,* 1991 WL 185243 ("many factors must be considered in deciding the issue of when an election for a vacancy should take place, and these factors are peculiarly within

---

9. This Court is not confronted with the very different situation where the presiding officer of either house of the General Assembly refused to call a special election at all. Presented with that case, the Court would have to determine whether the language of the statute—"... the presiding officer of such House shall issue a Writ of Election ..."—is mandatory or directory. *See, e.g., Jackson v. Ogilvie,* 426 F.2d 1333 (7th Cir.1970), *cert. denied,* 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 64 (1970); *Hackett v. President of City Council,* 298 F.Supp. 1021 (E.D.Pa.1969), *aff'd,* 410 F.2d 761 (1969).

Because the Lieutenant Governor did not deny the right to vote altogether, the Court finds that plaintiffs' due process argument adds nothing to their basic assertion that the Lieutenant Governor abused his discretion in scheduling the special election on July 13, 1993.

10. There is authority for the proposition that in rational basis review "the reasons relied upon by the court need not be those actually relied upon by the actors or proffered by them *post hoc;* as long as the court can construct plausible reasons in support of the state action, the action must, under this standard, be upheld." *Rannels v. Hargrove,* 731 F.Supp. 1214, 1215 (E.D.Pa.1990). However, the Court has chosen in this case to base its decision on both the stated reason of the Lieutenant Governor and the additional basis discussed above.

the discretion of the state"); *Hackett*, 298 F.Supp. 1021 (court refused to require a special election to fill vacancies on the city counsel to be held on primary election date); *Ogilvie*, 426 F.2d at 1338 (government official "may prefer one day of the week over another, or cause the special election to coincide with or to avoid being held on the same day as another election").

Finally, the Court notes that had the Pennsylvania legislature intended to require the Lieutenant Governor to schedule special elections at the time of the next general or municipal election, the legislature could have established such a procedure. Section 2776 of the Pennsylvania Election Code, 25 Pa. Stat.Ann. § 2776, which sets forth the procedure for filling a vacancy in the United States Senate, for example, provides, *inter alia*, that the Senator's unexpired term is to be filled by a special election *to be held at the time of the next general or municipal election* occurring at least 90 days after the happening of the vacancy, and in the interim the Governor may make a temporary appointment to fill the vacancy. The Court takes no position as to the relative merits of the procedures set forth in sections 2776 and 2778. Whatever the reason for the different procedures, the Court "must accord the state's decision, undoubtedly 'passed in response to the states actual experience in these matters' to be a 'permissible exercise of its discretion'." *Trinsey*, 941 F.2d at 235 (citing *Valenti v. Rockefeller*, 292 F.Supp. 851, 866 (S.D.N.Y.1968)). "If the voters of the state are unhappy with the legislature's decision, then the democratic process gives them ample opportunity for redress." *Id.*

## VII.

■ In their Amended Complaint, plaintiffs also charge they are being unconstitutionally denied representation in the Pennsylvania Senate. *See* Amended Complaint at ¶¶ 36, 45, 48. Plaintiffs do not, however, cite any cases in support of this argument.

To the extent that this contention is based on the due process clause of the Fourteenth Amendment, the Court holds that an additional two months without representation in the Senate is not "a fundamental imperfec-

tion in the functioning of democracy." *Rodriguez*, 457 U.S. at 11, 102 S.Ct. at 2200 (citing *Valenti v. Rockefeller*, 292 F.Supp. 851, 867 (S.D.N.Y.1968)); *see Hackett*, 298 F.Supp. at 1029 ("the longer the plaintiffs are without a district councilman the more serious their claim of deprivation of a fundamental right becomes"). To the extent that this contention is based on the equal protection clause of the Fourteenth Amendment, the Court holds that a delay of two months does not violate the equal protection clause of the Fourteenth Amendment. *See Mason*, 1991 WL 185243 (delay of five months in calling special election does not violate equal protection clause).

## VIII.

■ In their Amended Complaint, plaintiffs additionally charge that section 2778 is unconstitutional because the statute promotes "purposeful discrimination" against plaintiffs and the other citizens of the 10th Senatorial district "based upon political beliefs and affiliations" in violation of the First Amendment. *See* Amended Complaint at ¶ 40. The First Amendment protects the right "to associate for the common advancement of political beliefs." *Democratic Party of United States v. Wisconsin*, 450 U.S. 107, 122, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 (1981) (citing *Kusper v. Pontikes*, 414 U.S. 51, 56, 94 S.Ct. 303, 307, 38 L.Ed.2d 260 (1973)). This right "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only. Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents." *Id.*

In the instant case, section 2778 of Election Code in no way infringes on the right of plaintiffs, or any other citizens of the 10th Senatorial District, to associate with any political party, or to participate in the special election because of their party affiliation. Nor does section 2778 interfere with the rights of any political party to control its own internal affairs or set its own goals. *See Orloski v. Davis*, 564 F.Supp. 526, 534 (M.D.Pa.1983). Moreover, all registered voters of the 10th Senatorial District can vote in

**1218**

the special election, and candidates from any political party may run for the vacant Senate seat. "Here, the voters' choices in an election are not being limited; the election in which they may vote is, rather, being postponed." *Republican Party of Oregon v. Keisling,* 959 F.2d 144, 145 (9th Cir.1992). Thus, section 2778 does not violate plaintiffs' First Amendment right of association. *Cf. Rodriguez,* 457 U.S. at 14, 102 S.Ct. at 2202.

### IX.

In sum, the Court concludes that section 2778 of the Pennsylvania Election Code, 25 Pa.Stat.Ann. § 2778, is constitutional on its face and as applied by the Lieutenant Governor in scheduling the special election for July 13, 1993.

An appropriate Order follows.

### *ORDER*

**AND NOW,** to wit, this 12th day of March, upon consideration of the Motion of Defendant, Mark Singel, Lieutenant Governor of the Commonwealth of Pennsylvania, to Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 8), the Motion of Defendant Brenda K. Mitchell, Secretary of the Commonwealth of Pennsylvania, to Dismiss the Amended Complaint (Document No. 15), the Motion of Intervenor, H. William DeWeese, Speaker of the House of Representatives of the Commonwealth of Pennsylvania, to Dismiss the Complaint (Document No. 13), the Response of Plaintiffs, James C. Greenwood, David W. Heckler, Thomas Druce, Roy Reinard, III, Paul I. Clymer and David J. Steil (Document No. 11), and the Reply Memorandum of Defendant, Mark Singel (Document No. 14), after oral argument in open court on March 4, 1993, **IT IS ORDERED** that the Motions of Defendants Singel and Mitchell and Intervenor DeWeese to Dismiss the Complaint are **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Petition for Injunction and Other Relief (Document No. 7) is **DENIED.**